RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
JOANNE L. DIAMOND
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Joanne_Diamond@fd.org

Attorney for Joshua A. Martinez

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:21-cr-00219-APG-DJA |
| Plaintiff, | **Motion to Suppress** |
| v. | **(Evidentiary Hearing Requested)** |
| Joshua A. Martinez, | |
| Defendant. | |

Mr. Martinez's Fourth Amendment protections were violated by the Las Vegas Metropolitan Police Department (LVMPD) when officers executed a series of invalid search warrants for his homes, cellphone, and Facebook account. The evidence seized from these searches—including the firearms and ammunition Martinez is charged with unlawfully possessing—should be suppressed. Martinez submits the following Points and Authorities supporting his motion.[1]

---

[1] This motion is timely filed. *See* ECF No. 35 at 4.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   Relevant Factual Background and Procedural History[2]

Martinez is a vocal supporter of the First Amendment and a prominent local activist in the field of police accountability. He has crossed paths—and words—with LVMPD on many occasions as a result of his First Amendment/ police accountability activities. The indictment in this case resulted from search warrants obtained and executed by LVMPD while investigating Martinez for allegedly harassing one of their detectives, Kenneth Mead. As a result of these invalid warrants, LVMPD seized (among other items) firearms from Martinez's home in Las Vegas; firearms from a white Nissan parked outside the curtilage of his Las Vegas home; and ammunition from Martinez's home in Moapa.

### A.   The January Facebook warrant

On January 7, 2021, an LVMPD officer became aware of a Facebook post made the previous day under Martinez's public profile.[3] Exhibit 1 (January Facebook warrant) at USAO-000045. The post included three pictures of Mead and stated:

> This is Detective Kenneth Mead with the Metropolitan Police Department. He is an enemy of the constitution and has tried to make my life a living hell but has failed. To any activist here in Las Vegas please keep an eye out

---

[2] The facts alleged are drawn from the discovery the government has thus far provided and are presented for purposes of this motion. Martinez reserves the right to challenge and supplement these facts based on his own investigation and information that may be discovered at the evidentiary hearing in this matter.

[3] Since the warrants were issued in this case, Facebook rebranded itself "Meta." *See* Meta Investor Relations, Press Releases, *Introducing Meta: A Social Technology Company* (Oct. 28, 2021), available at https://about.fb.com/news/2021/10/facebook-company-is-now-meta/). For consistency, this motion refers to the platform as Facebook.

for him. I also have his resume just in case you want more intel on him. Contact me for more information.

*Id.* at USA0-000045-46. Based solely on this post, the officer believed Martinez was "attempting to conspire with local 'activists' in order to target Mead for harassment." *Id.*

The officer subsequently located additional posts on Martinez's Facebook account, and videos on his YouTube channel, expressing anti-government sentiments and a belief that Mead was persecuting him. *See, e.g., id.* at USAO-000047-49, 000054. The officer also spoke with Mead. *Id.* at USAO-000055. On January 13, 2021, the officer applied for a warrant to search Martinez's Facebook account for evidence of stalking with use of the internet and conspiracy to intimidate a public officer. *Id.* at USAO-000044. A Nevada state district court judge approved the warrant. *Id.* at USAO-000060.

**B.     The residential warrant**

On February 17, 2021, an individual claiming to be Martinez called LVMPD and said he was trying to contact Mead. Exhibit 2 (residential warrant) at USAO-019302-03. After the call ended, the dispatcher called Mead who then contacted his immediate supervisor. *Id.* at USAO-019303. Mead's supervisor searched Martinez's public social media and located additional anti-government expressions, comments about Mead, and comments about Deputy District Attorney Michael Dickerson. *Id.* at USAO-019303-05. The supervisor spoke with Mead and Dickerson about their experiences with Martinez. *Id.* at USAO-019306-09. He also searched the Instagram account "Battlebornmedia," and determined it belonged to Martinez. *Id.* at USAO-19305. On the public Battlebornmedia page, he saw an undated photograph of Martinez holding what appeared to be an AK-47 rifle. *Id.*

3

On February 18, 2021, LVMPD applied for a warrant to search Martinez's homes in Las Vegas, Nevada, and Moapa, Nevada, for evidence of aggravated stalking, stalking with use of the internet, harassment, and "fight or challenge to fight involving use of a deadly weapon." *Id.* at USAO-019292. A Nevada state district court judge approved the warrant. *Id.* at USAO-019317. On February 19, 2021, LVMPD obtained a telephonic "piggy-back" warrant to search four vehicles located outside the curtilage of Martinez's Las Vegas address. Exhibit 3 (vehicle warrant).

### C.     The February Facebook warrant

On February 22, 2021, LVMPD obtained a warrant to search Martinez's Facebook account for a second time. Exhibit 5 (February Facebook warrant). Whereas the January Facebook warrant sought evidence of stalking with use of the internet and conspiracy to intimidate a public officer, the February warrant sought evidence of aggravated stalking, stalking with use of the internet, harassment, and own/possess gun by prohibited person. Ex. 5 at USAO-019247.

### D.     The cellphone warrant

On February 18, 2021, an arrest warrant was issued for Martinez for aggravated stalking, stalking with use of the internet, and harassment. Exhibit 4 (arrest warrant). Martinez was arrested by LVMPD the next day as he rode in a car driven by his father. Ex. 5 at USAO-019236. Officers froze the vehicle and applied for a telephonic warrant to search it. *See* Exhibit 6 (cellphone warrant) at USAO-027526. Martinez's phone was in the passenger seat where he had been sitting. *Id.* On February 24, 2021, LVMPD obtained a warrant to search Martinez's phone for evidence of aggravated stalking, stalking with use of the internet, harassment, and own/possess gun by prohibited person. Ex. 6 at USAO-027533.

4

## II.   Argument

### A.   Martinez's Fourth Amendment rights against unreasonable searches and seizures were violated when LVMPD executed the invalid search warrants.

#### 1.   The warrants lacked probable cause to search for evidence of the target crimes.

To protect against unreasonable searches and seizures, the Fourth Amendment requires search warrants to be supported by probable cause. U.S. Const. amend IV. Probable cause exists "if an affidavit presents a 'fair probability' evidence of criminal activity will be found in the place to be searched." *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Thus, the facts in an affidavit requesting a search warrant "must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched at the time the warrant is issued." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004). Martinez's private information in his Facebook account is also entitled to Fourth Amendment protections. *See Flores*; *United States v. Chavez*, 423 F.Supp.3d 194, 197-99 (W.D.N.C. 2019)

The January Facebook warrant authorized LVMPD to search for evidence of stalking with use of the internet and conspiracy to intimidate a public officer. Ex. 1 at USAO-000044. The residential warrant authorized them to search for evidence of stalking with use of the internet, aggravated stalking, and harassment. Ex. 2 at USAO-019292. The February Facebook warrant and the cellphone warrant both authorized them to search for evidence of stalking with use of the internet, aggravated stalking, harassment, and own/possess gun by prohibited person. Ex. 5 at USAO-019247; Ex. 6 at USAO-027533. But the

5

warrants lacked probable cause that evidence of any crime would be found in the places to be searched.

### a. The warrants lacked probable cause to search for evidence of stalking, conspiracy to intimidate a public officer, and harassment.

To establish probable cause to search for evidence of the target crimes of stalking, conspiracy to intimidate a public officer, and harassment, LVMPD relied almost exclusively on Martinez's public Facebook posts and his public YouTube videos. Ex. 1 at USAO-000045-55; Ex. 2 at USAO-019292-305; Ex. 5 at USAO-019247-62; Ex. 6 at USAO-027508-21. Because the warrants relied on the personal opinions Martinez expressed on the internet, this Court must consider the validity of the warrants through the lens of the First Amendment.

The Supreme Court has explained a state statute "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969). "'[A] law imposing criminal penalties on protected speech is a stark example of speech suppression.'" *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019) *(quoting Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002)). Martinez's posted opinions may be considered by some as provoking, offensive, and shocking, but: "The right to provoke, offend and shock lies at the core of the First Amendment." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010).

### (1) Stalking

Under Nev. Rev. Stat. § 200.575(1), the crime of stalking requires: (1) the defendant—"without lawful authority"—"willfully or maliciously engages in a course of conduct directed towards a victim that would cause a reasonable person

under similar circumstances to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member;" and (2) the course of conduct "actually causes the victim to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member, commits the crime of stalking." Aggravated stalking occurs if the defendant also threatened the victim "with the intent to cause the[m] to be placed in reasonable fear of death or substantial bodily harm." Nev. Rev. Stat. § 200.575(3). Stalking with use of the internet is committed if the defendant used the internet "to publish, display or distribute information in a manner that substantially increases the risk of harm or violence to the victim." Nev. Rev. Stat. § 200.575(4). Here, the warrant application and affidavits failed to provide probable cause that Martinez committed stalking.

*First*, the statute requires the defendant to act "without lawful authority." Nev. Rev. Stat. § 200.575(1). Critically, "[*t*]*he term does not include acts which are otherwise protected* or authorized by constitutional or statutory law . . . *including*, but not limited to. . . . (4)  *Any activities carried out in the exercise of the constitutionally protected rights of freedom of speech*." Nev. Rev. Stat. § 200.575(11)(g)(4) (emphasis added).

*Second*, as detailed above, Nevada stalking requires the alleged course of conduct to "*actually cause[] the victim to feel*" terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member." Nev. Rev. Stat. § 200.575 (emphasis added). But the application and affidavit in support of the January Facebook warrant shows Mead did not tell his supervisor that Martinez caused him to feel terrorized, frightened, intimidated, harassed, or fearful; Mead merely said he "had no

7

contact with Martinez since his trial for carrying a concealed weapon ended in 2019." Ex. 1 at USAO-000055.

*Third*, aggravated stalking requires that Martinez intended to place Mead and Dickerson in reasonable fear of death or substantial bodily harm and stalking with the use of the internet requires that his social media posts substantially increased their risk of harm or violence. Thus, for these enhanced offenses, the question is no longer when protected speech becomes harassment, but when it becomes a "true threat." *Watts*, 394 U.S. at 708 (holding while a state "cannot criminalize constitutionally protected speech, the First Amendment does not immunize 'true threats'").

In *Virginia v. Black*, the Supreme Court held a state can punish threatening expression only if the "speaker *means to communicate a serious expression of an intent* to commit an act of unlawful violence to a particular individual or group of individuals." 538 U.S. 343, 359 (2003) (emphasis added). The Ninth Circuit has explained: "speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker *subjectively intended* the speech as a threat. . . . '[T]he element of intent is the determinative factor separating protected expression from unprotected criminal behavior.'" *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005) (quoting U*nited States v. Cassel,* 408 F.3d 622, 632-33 (9th Cir.2005) (emphasis added)). "[T]he true threat requirement is imposed by the Constitution." *United States v. Bagdasarian*, 652 F.3d 1113, 1117 (9th Cir. 2011). The Ninth Circuit has explained: "It is therefore not sufficient that objective observers would reasonably perceive such speech as a threat of injury or death." *Id.* at 1116.

In *Bagdasarian*, the Ninth Circuit analyzed the true threat requirement under the ordinary meaning of the word "threat" as defined in Webster's

Dictionary: "an expression of an intention to inflict . . . injury . . . on another." *Id.* at 1119. Supreme Court jurisprudence distinguishes "true threats" from hyperbolic remarks. *Watts*, 394 U.S. at 708. Even a statement appearing to threaten violence may not be a true threat if the context indicates it only expressed political opposition or was emotionally charged rhetoric. *See id.* at 706-08 (statement "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." at a rally is protected); *Claiborne Hardware Co.*, 458 U.S. at 886, 902, 928 (1982) (statement "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck" at a rally is protected as "emotionally charged rhetoric")."

In addition to holding and expressing generalized anti-government beliefs, Martinez truly believed he was being harassed and persecuted by Mead, and he responded with offensive and hyperbolic comments. *See*, *e.g.*, Ex.2 at USAO-019304. Examples include the following Facebook posts: a picture of Dickerson with the caption, "This is Michael Dickerson. He is Detective Meads [sic] Bitch. Dickerson, I hope YOU and Mead die a slow and painful death. I hope your family witness it. Mead, I have a message for you = Molon Labe," Ex. 6 at USAO-027518; and a picture of police officers carrying a flag-draped coffin with the caption, "I can't wait to see the news that Detective Kenneth Mead is in that casket," *id.* at USAO-027519; and the same picture of police officers carrying a flag-draped coffin with the caption, "How police officers take out their trash," with a comment that states "battlebornmedia RIP Mead,' *id.* at USAO-027520.

The comments at issue in *Bagdasarian* were far more troubling. Two weeks before the 2008 presidential election, Bagdasarian posted statements on an online message board including "Obama fk the niggar," Obama "will have a 50 cal in the head soon," and imploring others to "shoot the nig," lest the "country

9

[be] fkd for another 4 years+." 652 F.3d at 1119-20. The Ninth Circuit acknowledged: "There are many unstable individuals in this nation to whom assault weapons and other firearms are readily available, some of whom might believe that they were doing the nation a service were they to follow Bagdasarian's commandment." *Id.* at 1120. But there was no proof "he made the statements intending that they be taken as a threat," and "[a] statement that the speaker does not intend as a threat is afforded constitutional protection and cannot be held criminal." *Id.* 1122.

Because Martinez did not intend his expressions as a threat, his words cannot be held criminal. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) ("when specific intent is a required element of the offense" law enforcement "must have probable cause for that element in order to reasonably believe that a crime has occurred"). The application and affidavits for Facebook, cellphone, and residential warrants failed to establish probable cause that Martinez committed stalking, and the warrants lacked probable cause to search for evidence of that crime.

### (2) Conspiracy to intimidate a public officer

Unlike Nevada's stalking statute, to commit conspiracy to intimidate a public officer requires the defendant must specifically intend to threaten or intimidate the officer with the additional specific intent that the officer act contrary to his public duty. *See* Nev. Rev. Stat. § 199.300. Here, the January Facebook warrant application and affidavit failed to establish probable cause that Martinez intended to do either. Rather, Martinez was expressing his dissatisfaction with law enforcement generally, and Mead in particular. This is not a crime: it is protected speech.

10

Some examples of Martinez's Facebook posts related to law enforcement include: a picture of capitol rioter, Ashli E. Babbitt, with the caption "Remember this face next time you bootlickers want to wave your blue line flag. Get your heads out of your asses," Ex. 6 at USAO-027514; a picture of a stuffed dog with the caption "When the ATF kicks in your door and the first guy in the stack shoots your Tannerite stuffed German Shepard: So you have chosen death," *id.* at USAO-027515; and a picture of an English soldier during the revolutionary war and a picture of a police officer with the captions "Sometimes tyranny changes costumes" and "Something for the FAKETRIOTS with their thin blue line flag," *id.* at USAO-027516.

The Ninth Circuit in *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001), recognized: "The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" (quoting *City of Houston v. Hill,* 482 U.S. 451, 461 (1987)). The Court continued: "As the Supreme Court has noted, '[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'" *Id.* at 1082 (quoting *Hill,* 482 U.S. at 462-63).

As probable cause that evidence of conspiracy to intimidate a public officer would be found on Martinez's Facebook account, the requesting officer stated, based on his review of Martinez's friends list (totaling 693) and followers (91), "it appears clear that Martinez has the appropriate target audience on Facebook with which to continue his targeted harassment of Det. Mead by passing Intel regarding him to like-minded individuals." Ex. 1 at USAO-000055. Therefore,

11

"exploitation of Martinez's messages would provide valuable insight regarding the identities of whom Martinez is conspiring with as well as what intelligence information Martinez actually possess regarding Det Mead and whether it was gained through illegal means as well as any future plans to continue the targeted harassment." *Id.* at USAO-000055-56. These statements failed to establish probable cause to search for evidence of conspiracy to intimidate a public officer. The application and affidavit instead reads as a request for a fishing expedition to search for evidence that Martinez committed any crime at all.

### (3)   Harassment

The warrant application and affidavits failed to establish probable cause that Martinez committed harassment. The Nevada Supreme Court has interpreted the harassment statute (Nev. Rev. Stat. § 200.571(a)) as requiring "a knowing true threat." *Burwell v. Las Vegas Metro. Police Dep't*, No. 221CV01901RFBEJY, 2022 WL 445036, at *2 (D. Nev. Feb. 14, 2022). As discussed in Section II.A(1)(a)(1), above, the "true threat" analysis requires proof of Martinez's specific intent. Because the application and affidavits in support of the Facebook, cellphone, and residential warrants failed to establish the requisite intent, they failed to establish probable cause to search for evidence of harassment.

### b.   The warrants lacked probable cause to search for evidence of challenge to fight involving use of a deadly weapon or own/possess gun by prohibited person.

### (1)   Challenge to fight involving use of a deadly weapon

The application and affidavit for the residential warrant sought, among other things, firearms- and ammunition-related evidence. The requesting officer

failed to describe the firearms or ammunition he believed would be found in the homes. *See* Ex. 2 at USAO-019291. He provided no evidence he or someone else saw Martinez with a firearm or ammunition after he became a prohibited person. And, critically, he failed to state what crime the firearms- and ammunition-related evidence pertained to.

Of the four target crimes listed in the application and affidavit, the only one to which firearms- and ammunition-related evidence could conceivably relate is challenge to fight involving use of a deadly weapon. To establish probable cause that Martinez had committed this crime—and evidence of it would be found in his homes—the requesting officer referenced a February 17, 2021, post on Martinez's Facebook account, directed to Mead, using the phrase "Molon Labe." Ex. 2 at USAO-019303-04. According to the officer: "Gun-rights advocates have adopted the phrase as a challenge to perceived attempts by the government to confiscate firearms." *Id.* at USAO-019304. The officer therefore construed the Facebook post "as a challenge from Martinez to Det. Mead, in order to force a confrontation wherein Det. Mead or other officers attempt to seize Martinez's weapons." *Id.*

"Challenges to fight" is defined in Nev. Rev. Stat. § 200.450. The statute provides, in relevant part: "If a person . . . gives, sends or authorizes any other person to give or send a challenge verbally or in writing to fight any other person, the person giving, sending or accepting the challenge to fight any other person shall be punished." *Id.* The punishment increases if the fight involves the use of a deadly weapon. *Id.* But state law is clear: the crime is committed when a challenge is made *and accepted*, i.e. *a fight actually takes place. See Pimentel v. State*, 396 P.3d 759, 764 (Nev. 2017) ("The statute proscribes the *conveyance or*

13

1    *acceptance of a challenge to fight when such a fight or confrontation results.*"

2    (quoting *Wilmeth v. State*, 610 P.2d 735, 736 (Nev. 1980) (emphasis in original)).

3    The Nevada Supreme Court was explicit: "the statute should be clear to a person

4    of ordinary intelligence that the prohibited act is to engage in a fight after one

5    party issues a challenge to fight and the other party issues an acceptance to that

6    challenge." *Id.*

7         The officer—a person of ordinary intelligence—was well aware no fight

8    had taken place between Martinez and Mead. He could not, then, have probable

9    cause to believe evidence of the crime "challenge to fight" would be located in

10   Martinez's homes. The warrant was entirely lacking in probable cause to search

11   for firearms- and ammunition-related evidence.

12                    **(2)    Own/possess gun by prohibited person**

13        In addition to Martinez's public social media posts, the February Facebook

14   warrant application and affidavit and the cellphone warrant application and

15   affidavit referenced firearms- and ammunition-related evidence seized during the

16   execution of the residential warrant. Ex. 5 at USAO-019268; Ex. 6 at USAO-

17   027527-28. But, as discussed in detail below, the residential warrant was invalid.

18   As such, the evidence recovered is fruits of the poisonous tree and could not

19   establish probable cause.

20        Without the firearms- and ammunition-related evidence, all that remained

21   in the application and affidavits in support of probable cause for own/possess gun

22   by prohibited person were references to: (1) Martinez's status as a prohibited

23   person; (2) the February 17, 2021, "molon labe" Facebook post; and (3) an

24   undated photograph on the Battlebornmedia Instagram account of Martinez

25   holding what appeared to be an AK-47 rifle. Ex. 5 at USAO-019249, 59, 61; Ex. 6

26   at USAO-027510, 18, 20. LVMPD had no information as to when the photograph

                                          14

of Martinez was taken. LVMPD had no information that the firearm was real. And LVMPD had no information to suggest Martinez would be in possession of firearms- and ammunition-related evidence at the time the warrant was issued. *See Alvarez*, 358 F.3d at 1203 (stating a search warrant "must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched *at the time the warrant is issued*") (emphasis added). Because the application and affidavits failed to establish probable cause that Martinez owned or possessed a gun at the time the warrants were issued, the warrants lacked probable cause to search for evidence of that crime.

## 2. The warrants were so broad they violated the Fourth Amendment's particularity requirement.

In addition to establishing probable cause, a warrant must particularly describe the place to be searched and the persons or things to be seized. U.S. Const. amend IV. Particularity requires that the warrant clearly state what is sought. *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)). "It is not enough that the warrant makes reference to a particular offense; the warrant must 'ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) (*quoting Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)). The particularity requirement prevents "general, exploratory searches," which violate the Fourth Amendment. *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986).

### a.     The Facebook warrants

As courts have recognized, Facebook provides "a single window through which almost every detail of a person's life is visible. Indeed, Facebook is designed to replicate, record, and facilitate personal, familial, social, professional, and financial activity and networks." *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, *8 (N.D. Iowa Feb. 6, 2020) (quotations omitted). Here, the warrants allowed LVMPD to search and seize virtually all data and information in Martinez's Facebook account. The warrants should—and could—have been more limited in scope.

A search of a Facebook account differs from a traditional search in that Facebook (the holder of the data) can search an individual account for law enforcement and provide the precise data requested. *Burkhow*, 2020 WL 589336 at *8 (citing *United States* v. *Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("[W]hen it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data.")). Facebook's guidelines on data retention state they "will search for and disclose data that is specified with particularity."[4] Given Facebook's ability to fulfill specific data requests and the vast trove of personal information in a Facebook account, "search warrants for social media profiles 'can and should be targeted and particular.'" *Id.* at *8 (quoting *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *4 (E.D. Ky. Aug. 30, 2019), *report and*

---

[4] Safety Center, Information for Law Enforcement Authorities, *Data Retention and Availability*, Facebook.com (available at https://www.facebook.com/safety/groups/law/guidelines/).

*recommendation adopted*, No. 6:18-CR-57-REW-HAI, 2019 WL 4452828 (E.D. Ky. Sept. 17, 2019)).

The crimes specified in the Facebook application and affidavits were stalking with use of the internet, aggravated stalking, conspiracy to intimidate a public officer, harassment, and own/possess gun by prohibited person. Ex. 1 at USAO-000044, Ex. 5 at USAO-019247. The warrants authorized LVMPD to search for seven categories of items: (1) basic user identity information; (2) IP address logs; (3)&(4) all private communications including in-box messages, sent messages, and messages in the trash folder; (5) current and deleted statuses; (6) stored user files including photographs, videos, posts, and blogs; (7) check-in statuses depicting the user's location. Ex. 1 at USAO-000058-59, Ex. 5 at USAO-019245-46. None of the categories were limited to seizing evidence of the target crimes. *Id.* And, with the exception of check-in statuses, there was no temporal limitation to the search. *Id.* The January warrant covered check-in statuses from October 13, 2018, to December 13, 2018. Ex. 1 at USAO-000044. The February warrant covered October 13, 2018, to February 22, 2021. Ex. 5 at USAO-019248.

The scope of the warrant should have been limited by the crimes alleged. *Irving*, 347 F.Supp.3d at 624 (holding Facebook warrant should have been defined and limited by the target crime). This could have been accomplished by using search terms to limit the information requested from Facebook, as has been done in other cases. In *Blake*, the court found "with respect to private instant messages . . . the warrants could have limited the request to messages sent to or from persons suspected at that time of being prostitutes or customers." 868 F.3d at 974. The warrant here could have limited the search to private messages sent to Mead and to and from persons discussing Mead, and any deleted wall messages and postings using the term "Mead." And private messages and wall

17

posts referencing "guns," "weapons," or "firearms." But no limitations were placed on the requested information, although the Fourth Amendment requires it, and Facebook's guidelines support it.

### b.    The residential warrant

The Fourth Amendment confers the right for people to "be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person's home receives special constitutional protections because "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *United States v. Nora*, 765 F.3d 1049, 1056-57 (9th Cir. 2014) (internal quotation marks and citation omitted). Indeed, the home is "the most constitutionally protected place on earth." *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008).

The residential warrant allowed officers to search for: (1) firearms, ammunition, holsters, firearms cases, gun cleaning equipment, receipts for firearms, ammunition or equipment purchases indicating purchase, possession, or acquisition of firearms and/or ammunition; (2) digital or physical items indicating planning, ideology, and/or preoperational surveillance to include maps, drawings, concert tickets, hotel room reservations and receipts, notes, pictures (digital or physical), cameras, video recorder, or digital media, flash drives, computers, hard drives, laptops, cellular telephones, and tablets; (3) any people located in the premises at the time of service; and (4) any vehicles located at the property at the time of service. Ex. 2 at USAO-19291.

The warrant also allowed officers to search and seize: any articles of personal property which would tend to establish the identity of persons in control of the premises, including but not limited to papers, documents and effects which

tend to show possession dominion and control over the premises, including but not limited to keys, canceled mail envelopes, rental agreements and receipts, utility and telephone bills, prescription bottles, vehicle registration, vehicle repairs and gas receipts; items which tend to show evidence of motive and/or the identity of the perpetrator such as photographs and undeveloped film, insurance policies and letters, address and telephone records, diaries, governmental notices, whether such items are written typed or stored on computer disc; and objects which bear a person's name, phone number or address. *Id.* at USAO-19292.

In determining whether a warrant is sufficiently particular, the Ninth Circuit has outlined three factors to consider: (1) whether probable cause exists to seize all items of a particular type described; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the affiant was able to describe the items more particularly in light of the information available at the time the warrant was issued. *United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (quoting *Spilotro,* 800 F.2d at 963). This warrant satisfies none of those factors.

### (1) Probable cause did not exist to seize all items of a particular type described in the warrant.

LVMPD did not establish probable cause to search for any digital or physical items unrelated to Martinez and the target crimes. Yet, the warrant allowed officers to search for and seize vague and generalized items including "digital or physical items indicating planning, ideology, and/or preoperational surveillance." Ex. 2 at USAO-019291. The warrant does not state who was "planning" what, describe the "ideology" at issue or the "operation" subject to "preoperational surveillance," or how any of these search terms relate to the target crimes. The digital and physical items to be searched and seized included

19

"maps, drawings, concert tickets, hotel room reservations and receipts [and]notes." *Id.* The warrant fails to narrow these items to evidence of the target crimes or specify how they might constitute evidence of those crimes. *Spilotro*, 800 F.2d at 964-65 (ordering total suppression where the "warrant authorized, among other things, the seizure of address books, notebooks, notes, documents, records, assets, photographs, and other items and paraphernalia evidencing violations of the multiple criminal statutes").

The warrant allowed LVMPD to search and seize "items which tend to show evidence of motive and/or the identity of the perpetrator." *Id.* at USAO-019292. But to obtain a warrant in the first place, the requesting officer was required to demonstrate probable cause that Martinez committed the target crimes and evidence of those crimes would be present in his homes. Instead, the warrant allowed LVMPD to look for evidence of other unspecified crimes committed by other, unknown individuals.

> **(2)** **The warrant failed to set out objective standards by which executing officers could differentiate items subject to seizure from those which were not.**

A sufficiently particular warrant "must leave the executing officers no discretion as to what items are to be seized." *United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." (internal quotation marks omitted)). Here, the warrant failed to set a standard by which officers could differentiate items subject to seizure from those ordinarily found in a common home. The home was shared by six adults and three children. Yet the warrant allowed LVMPD to seize "photographs and

20

undeveloped film, insurance policies and letters, address and telephone records, diaries, governmental notices, whether such items are written typed or stored on computer disc," as well as "[o]bjects which bear a person's name, phone number or address." Ex. 2 at USAO-019292. The consequence of an arbitrary search is "a general, exploratory rummaging in a person's belongings," which the Fourth Amendment prohibits. *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971), *holding modified by Horton v. California,* 496 U.S. 128 (1990).

> **(3)    LVMPD was able to describe the items more particularly in light of the information available at the time the warrant was issued.**

As to the third *Adjani* factor, LVMPD was able to describe the items more particularly in light of the information it had at the time the warrant was issued. LVMPD theorized Martinez had committed four specific crimes—aggravated stalking, stalking with use of the internet, harassment, and challenge to fight involving use of a deadly weapon—against two specific victims: Mead and Dickerson. The application and affidavit described in detail Martinez's social media activity and Mead and Dickerson's alleged fear of Martinez. Thus, items relevant to the search should have been related to stalking and harassment of those two individuals, such as maps of Mead's and Dickerson's homes or places of work; photographs of Mead and Dickerson; and notes and diaries demonstrating stalking or harassment of Mead and Dickerson. Thus, the three *Adjani* factors are not met here.

1
2
3

**(4)    The "piggy-back" warrant to search vehicles outside the curtilage of Martinez's Las Vegas address was invalid and the evidence seized must be suppressed.**

4    On February 19, 2021, LVMPD obtained a telephonic "piggy-back" warrant

5    to search four vehicles located outside the curtilage of Martinez's Las Vegas

6    address, including a white Nissan Versa. Ex. 3 at USAO-019326. The evidence

7    obtained from this search—including the firearms- and ammunition-related

8    evidence—must be suppressed for two reasons. First, the vehicle warrant lacked

9    probable cause. Second, the evidence seized from the vehicle search is fruits of

10   the poisonous tree.

**1)    The vehicle warrant lacked probable cause**

11
12

13   The piggy-back warrant allowed officers to search for evidence of all the

14   target crimes listed in the residential warrant. Ex. 3 at USAO-19326. As probable

15   cause, the requesting officer stated, prior to executing the residential warrant,

16   LVMPD conducted surveillance at Martinez's Las Vegas address: "While

17   surveillance was ongoing and *Martinez was still in the house* officer [sic] observed

18   several *other individuals* entering leaving the residence and entering and leaving

19   multiple cars parked along the side of the property. It appears [sic] that

20   individuals were moving properties between the home and several cars." *Id.* at

21   USAO-019327 (emphasis added). The requesting officer additionally noted:

22   "Officer [sic] conducting surveillance specifically and noted that ah *an individual*

23   *who was not Martinez* [sic] moving a gun case from inside the residence into the

24   white Nissan Versa.*" Id.* (emphasis added). During execution of the warrant at

25   Martinez's Las Vegas home, officers spoke with his stepbrother, Lawrence

26   Estrada, who was standing next to the white Nissan. *Id.* Estrada told officers "he

owns firearms and that today he moved one of his guns from inside the residence to the vehicle." *Id.* These facts failed to establish probable cause that evidence of a crime would be found in the vehicles.

First, the facts alleged in the vehicle warrant only addressed the crime prohibited person in possession of a firearm. There were *no* allegations of probable cause for the remaining target crimes of stalking, aggravated stalking, harassment, or challenge to fight with a deadly weapon. Second, the warrant lacked probable cause that evidence of prohibited person in possession of a firearm would be found in the vehicles. The telephonic application and affidavit focused exclusively on the white Nissan but provided nothing connecting Martinez to that vehicle. There was no claim that Martinez owned the vehicle or that it was registered to him. None of the people seen taking items from the home to the vehicles was Martinez, who Martinez stayed inside the home all day. And Estrada explicitly told officers *he* had moved the gun case to the Nissan, and that the gun inside belonged to *him*.

### 2) Evidence seized from the vehicles is fruits of the poisonous tree.

The exclusionary rule "prohibits the introduction of tangible materials seized during an unlawful search [or seizure], and of testimony concerning knowledge acquired during an unlawful search [or seizure]." *Murray v. United States*, 487 U.S. 533, 536 (1988) (internal citations omitted). The rule "also prohibits the introduction of derivative evidence both tangible and testimonial that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search [or seizure]." *Id.* at 536-37. Evidence "obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." *United States. v. Wanless*, 882

F.2d 1459, 1465 (9th Cir. 1989); *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987). Because LVMPD were present at Martinez's Las Vegas home pursuant to an invalid warrant, any evidence obtained through their presence at the home could not be used to establish probable cause for the piggy-back warrant to search the vehicles outside the home's curtilage. Evidence obtained from the vehicles, including the white Nissan, must be suppressed.

### c.   The cellphone warrant

#### (1)   Martinez's phone is fruits of the poisonous tree because the arrest warrant leading to its seizure lacked probable cause.

Martinez's phone was seized from the passenger seat of his father's car pursuant to a telephonic warrant obtained after LVMPD arrested him for aggravated stalking, stalking with use of the internet, and harassment. *See* Ex. 4; Ex. 5 at USAO-019236; Ex. 6 at USAO-027526. But the arrest warrant did not establish probable cause that Martinez had committed those crimes. In the declaration of warrant/summons, LVMPD sought to establish probable cause for Martinez's arrest by relying on his public social media posts. *See* Exhibit 4A (Declaration of warrant/summons) at 1-9. As discussed in Section I.A(1)(a), above, Martinez's social media posts failed to establish probable case that he committed the target crimes. Because the arrest warrant was invalid, the warrant to search the vehicle was based on an unlawful arrest and the evidence obtained from Martinez's phone is fruits of the poisonous tree.

#### (2)   The warrant was overbroad.

The warrant authorized LVMPD to search Martinez's phone for "digitally stored records of user and/or device created data" which (1) "may constitute evidence of Joshua Martinez's involvement in the planning or commission of" the

24

target crimes "which occurred on or about 02/17/2021 through 02/19/2021," and (2) "would tend to establish the identity of the persons" in control of the phone. Ex. 6 at USAO-027507. Suppression is required because the warrant lacked particularity and was overbroad.

The warrant allowed LVMPD to search "digitally stored records of user and/or device created data"—a generic and unparticularized category of material indistinguishable from the categories of items considered by the Ninth Circuit to warrant total suppression. *See Cardwell*, 680 F.2d at 76, 78-79 (ordering total suppression where the item to be searched was described as "corporate books and records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers, weekly summaries, driver trip envelopes, and daily schedules, of the following (sic) corporations: Midwest Growers Cooperative Corporation, Coast Express Inc., West Coast Systems Inc., and Interstate Carriers Corporation(,) which are the fruits and instrumentalities, of violations of 26 U.S.C. s 7201."); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (ordering total suppression where the warrant sought "virtually every document and computer file" of a target business).

The warrant failed to set forth any objective standards to distinguish between content on Martinez's phone that is evidence of the target crimes versus content that is not. *Cardwell*, 680 F.2d at 78 ("If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized."). Additionally, nothing about the way the enumerated categories of information are drawn in the warrant inherently serves this function, *Wong*, 334 F.3d at 836, and just invoking the statute of the crime under investigation is not a meaningful guardrail. *See Cardwell*, 680 F.2d at 78 ("'limiting' the search to only records that

25

are evidence of the violation of a certain statute is generally not enough."). Rather, the warrant left it to LVMPD "'to make a legal distinction" on the fly between what was relevant to the target crimes and what was not, a distinction that only a neutral magistrate can make. *Id*. at 78 (quoting *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980)); *see also Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.").

Finally, the warrant has no meaningful subject matter or temporal limitations or any safeguards to cabin LVMPD's examination of Martinez's sensitive digital data. Although the warrant stated the crimes were alleged to have occurred "on or about" February 17 through 19, 2021, there were no temporal limitations on the scope of the records and data to be searched. There is no search warrant return or formal inventory of the data collected and reviewed from Martinez's phone, only the data extraction itself which was exhaustive: LVMPD took a complete copy of the phone. *See* Exhibit 6A (cellphone forensic exam report). The search of Martinez's phone was boundless, and all the contents must be suppressed. *See United States v. Chen*, 979 F.2d 714, 716 (9th Cir. 1992) (noting total suppression is appropriate where flagrant disregard of a warrant's terms rendered it a general search)

### 3. Evidenced seized pursuant to the invalid warrants must be suppressed.

Because the warrants lacked probable cause to search for evidence of the target crimes and were overbroad, Martinez's Fourth Amendment rights were violated. "If a warrant lacks probable cause, evidence obtained during its

26

execution should generally be suppressed under the exclusionary rule." *United States v. Underwood*, 725 F.3d 1076, 1084 (2012) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). Evidenced seized pursuant to the invalid warrants must be suppressed.

### 4.   The good-faith exception cannot save the invalid warrants.

Martinez recognizes evidence need not be suppressed when an officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). But this "good faith" exception has limits. It does not apply: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge "wholly abandon[s] his [or her] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* In any of these circumstances, a reviewing court need not inquire further and should conclude the exception does not apply. *Id.*

At least two of the circumstances apply to the warrants here. First, the warrants failed to establish probable cause that evidence of the target crimes would be found in the places to be searched. Second, the warrants so failed to particularize the items to be seized, the executing officers could not have reasonably presumed them valid. Under these circumstances, the warrants are not saved by the good faith exception.

1

### III.    Conclusion

2   Martinez's Fourth Amendment rights were violated because the search

3   warrants lacked probable cause and were overbroad. The good faith exception is

4   not applicable under the circumstances and the evidence seized from the

5   search—including the firearms and ammunition Martinez is charged with

6   unlawfully possessing—must be suppressed.

7   DATED: August 18, 2022.

8                                               RENE L. VALLADARES
                                                Federal Public Defender
9

10                                              By: */s/ Joanne L. Diamond*
                                                JOANNE L. DIAMOND
11                                              Assistant Federal Public Defender
                                                Counsel for Joshua A. Martinez
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28