JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
DANIEL R. SCHIESS
Assistant United States Attorney
Nevada Bar Number 5483
Email: dan.schiess@usdoj.gov
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
*Attorneys for the United States of America*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSHUA A. MARTINEZ,<br><br>    Defendant. | Case No. 2:22-cr-00219-APG-DJA<br><br>**Government's Opposition to Defendant's Motion to Dismiss the Indictment (ECF No. 39)** |

**Certification: This response is timely.**[1]

### I. Introduction

Defendant Joshua A. Martinez ("Defendant") is charged in a four-count indictment with being a felon in possession of a firearm (Counts One and Two) and being a felon in

---

[1] Local Rule LCR 12-1 provides that "[u]nless the court orders otherwise," responses to pretrial motions must be filed within 14 days from the date of service of the motion. The Order on the Stipulation to Continue Motions Deadlines and Trial Dates, ECF No. 35, sets the date for responses to motions as November 21, 2022. On the other hand, the due date automatically entered in ECF for this response was October 20, 2022. The local rule by its express language controls. Undersigned government counsel has spoken with defense counsel, and she stated that she does not intend to object to the response on timing grounds.

possession of ammunition (Counts Three and Four).[2] Defendant now moves for this Court to dismiss the Indictment on the basis that, under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), his conduct, as alleged in the Indictment, is protected under the Second Amendment.[3] The defendant's argument fails because nothing in *Bruen* casts doubt on the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Defendant, a convicted felon. The Second Amendment does not protect the right of a felon to possess a gun. Moreover, even if the Second Amendment's plain text extended to such conduct, § 922(g)(1) falls within the nation's long-standing tradition of disarming citizens who engage in criminal activity or are otherwise not law-abiding.

## II.     Relevant Factual and Procedural Background

On February 19, 2021, law enforcement officers executed court-authorized search warrants at Defendant's residence in Las Vegas, Nevada, on vehicles associated with the Las Vegas residence, and at property occupied by Defendant in Moapa, Nevada. Officers seized from these locations firearms, or ammunition, or both. The indictment alleges that Defendant had been convicted in the Eighth Judicial District Court for Clark County, Nevada, of felony attempt to carry concealed weapon without a permit.[4]

## III.     Argument

Citing *Bruen*, Defendant asks this Court to find that 18 U.S.C. § 922(g)(1)'s prohibition on felons possessing firearms is unconstitutional as applied to him. At its heart, however, Defendant's motion is based on the Supreme Court's opinions in *Heller v. District of Columbia*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010). Contrary to

---

[2] ECF No. 1.
[3] ECF No. 39.
[4] ECF No. 1.

2

Defendant's claims, *Bruen* did not usher in any meaningful change to the Supreme Court's approach to the "plain text" of the Second Amendment (*i.e.*, step one of the analysis) as it relates to the charges here. Defendant's claims are as meritless now as they would have been if they had been brought immediately following *Heller* and *McDonald*. Even in applying the framework recently clarified by *Bruen*, Defendant's challenge is meritless because possessing a gun while a felon is conduct outside the scope of the Second Amendment's protections. Moreover, even if the Court were to find otherwise, the prohibition on felons possessing firearms falls well within the nation's long-standing tradition of disarming citizens who engage in unlawful activity.

### A. Defendant Fundamentally Misconstrues the Supreme Court's Second Amendment Jurisprudence.

Defendant's attempt to wield the Supreme Court's Second Amendment jurisprudence, principally its recent decision in *Bruen*, as a sword against the indictment is fundamentally at odds with Supreme Court precedent. A faithful analysis of *Bruen* and the other Supreme Court precedent on which it is based shows that Defendant's Second Amendment challenge to the indictment falls flat.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[5] In *Heller*, the Supreme Court recognized that the Second and Fourteenth Amendments protect the right of law-abiding, responsible citizens to possess a handgun in the home for lawful purposes, like self-defense.[6] The *Heller* Court thus held unconstitutional two District of

---

[5] U.S. CONST. AMEND. II.
[6] 554 U.S. at 635.

3

Columbia laws that effectively banned handgun possession in the home and required all firearms within homes to be kept inoperable and thus unavailable for self-defense.[7]

"Like most rights," however, the *Heller* Court emphasized that "the right secured by the Second Amendment is not unlimited."[8] It is "**not** a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."[9] Consistent with that principle, the *Heller* Court made clear that the opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."[10] Such regulations are "presumptively lawful."[11] Subsequently, in *McDonald*, a plurality of the Supreme Court "repeat[ed]" its "assurances" that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"[12]

In *Bruen*, the Supreme Court simply "made the constitutional standard endorsed in *Heller* more explicit."[13] It elaborated on the test *Heller* and *McDonald* set forth to determine whether a government regulation infringes on the Second Amendment right to possess and carry guns for self-defense, holding: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government

---

[7] *Id*. at 628–34.
[8] *Id*. at 626.
[9] *Id*. (emphasis added).
[10] *Id*. at 626–27.
[11] *Id*. at 627 n.26.
[12] 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626).
[13] 142 S. Ct. at 2134.

must **then** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[14]

The *Bruen* Court recognized that the first step – *i.e.*, analyzing the "plain text" of the Second Amendment and determining whether it covered the conduct in question – was "[i]n keeping with *Heller*."[15] However, the *Bruen* Court rejected the post-*Heller* test that had developed among the circuit and district courts at the second step of the analysis, in which courts applied so-called "means-end scrutiny" (*i.e.*, strict or intermediate scrutiny) to laws that were found to fall within the Second Amendment's "plain text."[16] Instead, the Court held that an analysis of the "Nation's historical tradition of firearm regulation," not means-end scrutiny, was the appropriate standard at the second step.[17]

Applying this constitutional standard, the Court held unconstitutional a provision of New York's licensing law that required an applicant to prove "proper cause exists" to obtain a license to carry a gun outside his home.[18] First, the Court held the Second Amendment's plain text covered the conduct at issue.[19] The *Bruen* petitioners were "ordinary, law abiding, adult citizens" who sought to carry handguns publicly for self-defense.[20] Thus, the Supreme Court concluded, they fell within "the right to keep and bear arms."[21] The Court then surveyed historical data from "medieval to early modern England" through "the late-19th and early-20th centuries" to determine whether the licensing law squared with historical tradition.[22] After a

---

[14] *Id.* at 2129–30 (emphasis added).
[15] *Id.* at 2126.
[16] *Id.* at 2127.
[17] *Id.*
[18] *Id. at* 2123.
[19] *Id.* at 2134–35.
[20] *Id.* at 2134.
[21] *Id.*
[22] *Id.* at 2135–56.

"long journey through the Anglo-American history of public carry, [the Court] conclude[d] that respondents ha[d] not met their burden to identify an American tradition justifying the State's proper-cause requirement."[23] "Apart from a few late-19th-century outlier jurisdictions," the Court summarized, American governments have not "required law-abiding, responsible citizens to demonstrate a special need for self-protection distinguishable from that of the general community in order to carry arms in public."[24]

Although *Bruen* rejected the means-end scrutiny framework most courts had relied upon to assess the constitutionality of gun regulation (after first finding that the conduct at issue was covered by the Second Amendment),[25] it did not, as Defendant suggests,[26] erase the two-step analysis entirely. *Bruen* also did not, as Defendant again erroneously suggests,[27] hold or even remotely imply that the Second Amendment protections extend to felons (even if nonviolent) who wish to possess firearms. Rather, throughout the opinion and concurring opinions, the Court reinforced *Heller* and *McDonald*'s pronouncement that the Second Amendment belongs to "law-abiding" citizens only.[28]

---

[23] *Id*. at 2156.
[24] *Id*. (quotation marks omitted).
[25] *Id*. at 2127.
[26] *See* ECF No. 39 at 6 and 12.
[27] *See id*. at 11.
[28] 142 S. Ct. at 2122, 2124-25, 2131, 2133, 2134, 2138, 2150, 2156; *see also id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("'[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'") (*citing Heller*, 554 U.S. at 626). To the extent the concurrence by Justices Kavanaugh and Roberts joined the *Bruen* lead opinion on narrower grounds, their concurrence is binding. *Marks v. United States*, 430 U.S. 188, 193 (1977); *see also United States v. Davis*, 825 F.3d 1014, 1021-22 (9th Cir. 2016) (en banc).

B.   **Being a Felon in Possession of a Firearm Is Not Protected by the Second Amendment.**

The indictment, which alleges that Defendant violated 18 U.S.C. § 922(g)(1), is not unconstitutional as applied to Defendant. First, the plain text of the Second Amendment does not protect the prohibited conduct: possessing a firearm as a convicted felon. Second, even if it did, § 922(g)(1) would still be constitutional because the statute is clearly consistent with the nation's long-standing historical tradition of disarming persons considered a risk to society.

i.   **The Second Amendment's Plain Text Does Not Encompass Felon Armament.**

It is well established that the plain text of the Second Amendment does not guarantee a right to felon armament, despite Defendant's conclusory statement to the contrary.[29] As explained above, in *Heller*, the Supreme Court defined the right protected by the Second Amendment as the right of "law-abiding, responsible citizens" to keep and bear arms for lawful purposes.[30] Consistent with that definition, the Court cautioned that "nothing in [its] opinion should be taken to cast doubt" on "longstanding prohibitions on the possession of firearms by felons."[31] The Court described these "permissible" measures as falling within "exceptions" to the protected right to bear arms.[32] In *McDonald*, a plurality of the Court "repeat[ed]" its "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"[33]

*Bruen* only reinforced the conclusion that the Second Amendment does not extend to possession of firearms by convicted felons. The concurrence of Justice Kavanaugh and Chief

---

[29] ECF No. 39 at 12.
[30] 554 U.S. at 635.
[31] *Id*. at 626.
[32] *Id*. at 635.
[33] 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626).

Justice Roberts reiterated that "longstanding prohibitions on the possession of firearms by felons" are constitutional.[34] The lead opinion repeatedly described the scope of the Second Amendment's protection as limited to lawful purposes by "law-abiding" citizens.[35] Consistent with that principle, *Bruen* approved "'shall-issue" licensing regimes that "require applicants to undergo a background check or pass a firearms safety course."[36] Such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms . . . are, which aims to ensure that "those bearing arms" are "law-abiding, responsible citizens" -- accords with the Second Amendment.[37]

Consistent with *Heller*, *McDonald*, and *Bruen*, the Ninth Circuit has also rejected similar as-applied Second Amendment challenges to § 922(g)(1).[38] In *United States v. Vongxay*, the Ninth Circuit held "that § 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon," because "felons are categorically different from the individuals who have a

---

[34] 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); *see Marks v. United States*, 430 U.S. 188, 193 (1977).
[35] *Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156, 2157, 2158, 2159, 2161.
[36] *Id*. at 2138 n.9; *see id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall issue licensing regimes are constitutionally permissible[.]")).
[37] *Id*. Defendant cites several dissents, concurrences, and non-binding dicta from court of appeal decisions that pre-date *Bruen* to suggest that there is no historical basis to exclude non-dangerous felons from the Second Amendment. (ECF No. 39 at 11-12). But the Chief Justice and Justice Kavanaugh—whose votes were necessary for the *Bruen* majority—clearly did not find these lower court concurrences and dissents persuasive, as it reiterated the constitutionality of a prohibition on felons (of any kind) possessing firearms. Similarly, the lead opinion did not attempt to distinguish between different types of non-law-abiding citizens when it repeatedly stated the Supreme Court was limited to "law-abiding citizens."
[38] Defendant suggests that *Bruen* overrules prior Ninth Circuit precedent on this issue. (ECF No. 39 at 11). *Bruen* did no such thing. Ninth Circuit law rejecting as-applied challenges to § 922(g)(1) comports with the observation by multiple Justices in the *Bruen* majority that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); *id*. at 2157 (Alito, J., concurring). Because this Court can "apply [Ninth Circuit] precedent consistently with that of the higher authority, [it] must do so." *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

fundamental right to bear arms."[39] Accordingly, *Vongxay* recognized that "'felons' Second Amendment rights can be reasonably restricted;"[40] thus, barring their possession of weapons is "presumptively lawful."[41] *Vongxay* further held that there is no constitutional difference between types of felons, explicitly declining "to make a distinction between violent and non-violent felons."[42] And *Phillips* reaffirmed this principle.[43]

In short, Defendant has not shown that his illegal conduct is covered by the plain text of the Second Amendment, and thus has not shown that § 922(g)(1) is subject to a historical traditional analysis. On this ground alone, the Court should deny his motion.

    **ii.**    **Section 922(g) Is Consistent with Long-Standing Tradition.**

Even if the Supreme Court had not already defined the Second Amendment in a way that excludes any right of convicted felons to possess firearms, the historical record supports the conclusion that Section 922(g)(1)'s restriction of firearm possession by felons is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

Defendant argues that § 922(g) lacks the necessary "historical pedigree" because it was not enacted until the 20th century.[44] In other words, Defendant takes the position that the government must show that there was a substantively identical criminal prohibition in place at the instant that the Second Amendment was ratified. But this is not the inquiry *Bruen* prescribes. On the contrary, the appropriate "analogical reasoning under the Second

---

[39] 594 F.3d 1111, 1115, 1118 (9th Cir. 2010).
[40] *Id*. at 1118 (stating, "Thus, there appears to be a consensus that, even given the Second Amendment's individual right to bears arms, felons' Second Amendment rights can be reasonably restricted").
[41] *Id*. at 1115; *see also United States v. Phillips*, 827 F.3d 1171, 1174-75 (9th Cir. 2016) (rejecting, as foreclosed by *Vongxay*, a felon's Second Amendment challenge to his § 922(g)(1) conviction based on nature of predicate felony).
[42] 594 F.3d at 1116.
[43] 827 F.3d at 1173-74.
[44] ECF No. 39 at 14.

Amendment is [not] a regulatory straightjacket . . . analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin."[45]

This manner of analysis makes sense because there are sound and sensible "modern regulations that were unimaginable at the founding."[46] For instance, in the early days of the Republic, most serious offenses (including murder and robbery) carried a mandatory death sentence.[47] Because these crimes were already punishable by the most severe penalty possible, it would have been nonsensical to enact a separate statute providing for a collateral consequence, such as forfeiting firearm rights of a man sentenced to death. Thus, the failure to create an equivalent of § 922(g) at the time the Second Amendment was adopted is not evidence that the Second Amendment forbade doing so.

Contrary to Defendant's assertion, it does not matter that the felon-in-possession statutes are "of mid-20th century vintage."[48] As the *Bruen* Court made clear by reaffirming what was already explicit in *Heller*, there have existed in this country "longstanding prohibitions on the possession of firearms by felons."[49] *Heller*'s point in endorsing felon-in-possession laws was not that they had existed in their modern form since the nation's founding, but that they were analogous enough to historical regulations to be deemed "longstanding."[50] And indeed, well-established and representative historical analogues to § 922(g) have existed throughout the nation's history.

---

[45] *Bruen*, 142 S. Ct. at 2133.
[46] *Id.* at 2132.
[47] *See, e.g.*, Crimes Act of 1790 §§ 3 and 8-10, 1 Stat. 113-114.
[48] *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111.
[49] 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring).
[50] *See* 544 U.S. at 626–27.

For centuries, the gun rights of certain groups have been categorically limited to promote public safety. Thomas M. Cooley's 1868 treatise, which *Heller* described as "massively popular,"[51] explained that some classes of people were "almost universally excluded" from exercising certain civic rights, including "the idiot, the lunatic, and **the felon**, on obvious grounds."[52] The Second Amendment incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and "'does not preclude laws disarming the unvirtuous (i.e. criminals).'"[53]

As the Ninth Circuit has observed, most scholars of the Second Amendment agree "that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'"[54] "Felons 'were excluded from the right to arms' because they were deemed unvirtuous."[55]

---

[51] 554 U.S. at 616.
[52] Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868) (emphasis added).
[53] *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue, Law & Contemp. Probs.*, Winter 1986 at 146 (1986)); *see also United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir. 2009) ("'Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as a civic right . . . limited to those members of the polity who were deemed capable of exercising it in a virtuous manner." (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002))).
[54] *Vongxay*, 594 F.3d at 1118 (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue* at 146, and Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995)). *Vongxay* acknowledges that scholars disagree on whether common law supports bans on felon gun possession. 594 F.3d at 1118 (citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?,* 32 Harv. J.L. & Pub. Pol'y 695, 714–28 (2009)). However, as demonstrated below, the historical evidence establishes that felons have always been subject to limitations and prohibitions on their right to possess firearms.
[55] *United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (quoting Reynolds, *A Critical Guide to the Second Amendment* at 480).

Historical records support this conclusion. "*Heller* identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents."[56] That report recognized the permissibility of imposing a firearms disability on convicted criminals and made no distinction as to the type of criminal, stating that "citizens have a personal right to bear arms '***unless for crimes committed***, or real danger of public injury.'"[57] Similarly, Samuel Adams offered an amendment at the Massachusetts convention to ratify the Constitution, recommending "that the said Constitution be never construed to authorize Congress . . . to prevent the people of the United States, who are peaceable citizens, from keeping their own arms."[58] In the same vein, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime."[59]

In this respect, the right to bear arms is analogous to other civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote;[60] the right to serve on a jury;[61] and the right to hold public office.[62] Just as Congress and the States have required persons convicted of felonies to forfeit other civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony conviction."[63]

Relying on that historical record, no court of appeals has sustained an as-applied challenge to § 922(g)(1) as to an individual convicted of a crime labeled and punishable as a

---

[56] *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 554 U.S. at 604).
[57] *Id.* (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)) (emphasis added).
[58] Schwartz, *The Bill of Rights* at 674–75, 681.
[59] *Skoien*, 614 F.3d at 640.
[60] *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974).
[61] 28 U.S.C. § 1865(b)(5).
[62] *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998).
[63] *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in judgment).

felony.[64] Indeed, courts of appeals "have consistently upheld applications of § 922(g)(1) even to nonviolent felons."[65] And several courts of appeals have recognized that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment."[66]

---

[64] At least 22 district-court decisions have considered and rejected post-*Bruen* challenges to the constitutionality of Section 922(g)(1). *See United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022); *United States v. Kimura*, No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022); *United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Williams*, No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022); *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27, 2022); *United States v. Perez*, No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022); *United States v. Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Delpriore*, No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022); *United States v. Hill*, No. 3:21-cr-107, Dkt. No. 70 (S.D. Cal. Sept. 20, 2022); *United States v. Rojo*, No. 3:21-cr-682, Dkt. No. 50 (S.D. Cal. Sept. 14, 2022); *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022); *United States v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022); *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022); *United States v. Doty*, No. 5:21-cr-21, Dkt. No. 34 (N.D. W.Va. Sept. 9, 2022); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Randle*, No. 3:22-cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022); *United States v. Ingram*, No. 0:18-cr-557, Dkt. No. 1714, 2022 WL 3691350 (D. S.C. Aug. 25, 2022); *United States v. Nevens*, No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal. Aug. 15, 2022); *United States v. Farris*, No. 1:22-cr-149, Dkt. No. 29 (D. Colo. Aug. 12, 2022); *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022); *United States v. Ramos*, No. 2:21-cr-395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022); *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022). As of the time of filing, the United States is not aware of any court to have ruled in favor of such a challenge.

[65] *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (collecting cases).

[66] *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010); *see also United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010). Only one court of appeals has held that an as-applied challenge to § 922(g)(1) is available. In *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc), the Third Circuit held § 922(g)(1) unconstitutional as applied to two plaintiffs who had been convicted of non-violent offenses labeled by the state as misdemeanors for which they served no prison time. Ten of the fifteen judges on the en banc court recognized that individuals convicted of "serious" crimes permanently forfeit their Second Amendment rights. *Id.* at 348-49 (opinion of Ambro, J.); *id.* at 396 (Fuentes, J., concurring in part and dissenting in part). But, in the controlling opinion, three of those ten judges concluded that the crimes at issue in *Binderup* were insufficiently serious to warrant a firearm disability because they were labeled by the state as misdemeanors, resulted in no jail time, were non-violent, and were not treated seriously by a "cross-jurisdictional consensus" of states. *Id.* at 351-53 (Ambro, J.). *Binderup* is not the law of this

Many colonies did not require dangerousness for disarmament. As defendant acknowledges,[67] there were colonial-era laws disarming those who defamed acts of Congress, failed to swear allegiance to the state, or refused to defend the colonies.[68] Moreover, as noted above, "at their ratification conventions, several states proposed amendments limiting the right to bear arms to both law abiding and 'peaceable' citizens."[69] Even if some laws at the Founding were concerned about dangerousness, "dangerousness was one reason to restrict firearm possession, but it was hardly the only one."[70] Accordingly, § 922(g)(1)'s prohibition on felons bearing arms is firmly rooted in this nation's history.

## V. Conclusion

Based upon the foregoing Points and Authorities, the government respectfully requests that the Court deny Defendant's Motion to Dismiss Indictment. *Bruen* in no way altered the constitutionality of § 922(g)(1) and thus leaves intact Supreme Court and Ninth Circuit law. Unless and until the Supreme Court or the Ninth Circuit holds that § 922(g)(1) is unconstitutional, Defendant's claim is foreclosed by binding precedent.

**DATED** this 21st day of October, 2022.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney
*/s/ Daniel R. Schiess*
DANIEL R. SCHIESS
Assistant United States Attorney

---

Circuit and, even in the Third Circuit, has not been applied to those convicted of offenses categorized by both state and federal law as felonies, *see Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 903- 04 (3d Cir. 2020).
[67] *Id.* at 18.
[68] *Folajtar*, 980 F.3d at 908 & n.11 (reviewing colonial laws from Connecticut, Pennsylvania, and Massachusetts).
[69] *Id.* at 908 (reviewing proposed amendments in Pennsylvania, New Hampshire, and Massachusetts).
[70] *Id.* at 909.