RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
JOANNE L. DIAMOND
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Joanne_Diamond@fd.org

Attorney for Joshua A. Martinez

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    v.<br><br>Joshua A. Martinez,<br><br>        Defendant. | Case No. 2:21-cr-00219-APG-DJA<br><br>**Reply in Support of Motion to Suppress**[1] |

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill,* 482 U.S. 451, 462-63 (1987). Martinez used social media to oppose and challenge law enforcement in general, and the actions of specific law enforcement personnel.

---

[1] This reply is timely filed. *See* ECF No. 38 at 2 ¶8.

Because the government's response does not create a dispute of fact necessary to this Court's resolution of his motion, Martinez withdraws his request for an evidentiary hearing.

Some of his comments may have been provoking, offensive, and shocking. But "[t]he right to provoke, offend and shock lies at the core of the First Amendment." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010).

In response, the government waives or fails to meaningfully rebut multiple arguments, improperly asks this Court to review information not presented to the issuing judge, and ultimately fails to show Martinez's First Amendment protected activity amounted to a "true threat"—the requisite intent for the target crimes of stalking, conspiracy to intimidate a public officer, and harassment.[2] The application and affidavits in support of the Facebook, residential, and cellphone warrants thus lacked probable cause to search for evidence of those crimes. Suppression of the evidence unlawfully seized is required.

I.  **The government does not defend the validity of the Facebook warrants, requiring suppression.**

   A.  **The government concedes the January warrant is invalid.**

The government expressly concedes it "is not defending the January Facebook warrant." ECF No. 40 at 12. As such, this Court should find the warrant invalid and suppress the January seizure of Martinez's Facebook account.

---

[2] Although the crime of own/possess gun by prohibited person is not a speech crime, the government defends probable cause to search Martinez's homes for firearms as "relevant to whether he made a true threat." ECF No. 40 at 21.

The government does not attempt to defend probable cause for the crime of challenge to fight involving use of a deadly weapon and this Court should find there was no probable cause to search Martinez's homes (or the vehicles in Las Vegas) for evidence of this crime.

### B. The government fails to defend the February warrant.

Throughout his motion, Martinez challenged the February warrant's lack of probable cause. *See* ECF No. 36 at 5-15. It is therefore unclear why, in response, the government erroneously claims the argument went undeveloped, ECF No. 40 at 28, and makes no attempt to argue probable cause existed, ECF No. 40 at 11 (limiting probable cause argument to "[t]he Residential, Vehicle, and Phone Warrants"). The government similarly fails to address the February warrant's overbreadth. *Compare* ECF No. 36 at 16-18; *with* ECF No. 40 at 11 (government addressing only "[t]he Residential, Vehicle, and Phone Warrants[']" specificity). The government has thus waived both arguments. LCR 47-3 ("The failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion.").

In fact, the government's response *bolsters* Martinez's claim as to the February warrant's overbreadth. LVMPD was clearly capable of narrowing the Facebook warrant. ECF No. 36 at 17-18. And the government's Exhibit C, a digital forensics lab request, ECF No. 40-3, demonstrates the existence of easy limitations readily available to the government to properly narrow the warrant. Specifically: "Any communications, pictures [related to] aggravated stalking/conspiring to . . . harm [ ] Det Ken Mead and DDA Michael Dickerson. Any pictures and communications to commit PPPFA. Any ideology or nexus to communicate with hate groups or extrem[i]sts to infl[i]ct harm upon Law Enforcement personnel and public officials." ECF No. 40-3. Thus, the government's Exhibit C supports the conclusion that the February warrant is overbroad. *See United States v. Irving*, 347 F.Supp.3d 615, 624 (D. Kan. 2018) (holding Facebook warrant should have been defined and limited by the target crime).

"'[W]here the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with scrupulous exactitude.'" *Armstrong v. Asselin*, 734 F.3d 984, 993–94 (9th Cir. 2013) (citation and internal quotation marks omitted). Because the government does not defend warrant's lack of probable cause or its overbreadth, this Court should suppress the February seizure of Martinez's Facebook account.

## II. The residential search warrant is invalid.

### A. The government fails to defend the Moapa search.

Martinez challenges the seizure of ammunition from his home in Moapa, as well as the seizure of firearms from his home, and a vehicle, in Las Vegas. *See* ECF No. 36 at 2 ("As a result of these invalid warrants, LVMPD seized (among other items) . . . ammunition from Martinez's home in Moapa"); 28 ("the evidence seized from the search—including the firearms and ammunition Martinez is charged with unlawfully possessing—must be suppressed"). It is unclear why, in response, the government claims Martinez "did not move to suppress evidence from the Moapa property." ECF No. 40 at 2 n.1.

The same search warrant covered both the Las Vegas and Moapa properties. *See* ECF No. 36 at 4 ("On February 18, 2021, LVMPD applied for a warrant to search Martinez's homes in Las Vegas, Nevada, and Moapa, Nevada"). Martinez accordingly challenged both searches by demonstrating the deficiencies in this "residential warrant" throughout his motion, *see* ECF No. 36 at 3, 5, 10, 12, 14, 18, 22, and consistently referencing the unlawful searches of his *homes*, *see* ECF No. 36 at 1 ("officers executed a series of invalid search warrants for his homes"); 12-13 ("The requesting officer failed to describe the [evidence] he believed would be found in the homes"); 13 ("To establish probable cause that Martinez had committed this crime—and evidence of it would be found in his

4

homes"); 14 ("He could not, then, have probable cause to believe evidence . . . would be located in Martinez's homes"); 20 ("the requesting officer was required to demonstrate . . . evidence of those crimes would be present in his homes").

Because the government failed to defend the unlawful search of Martinez's home in Moapa, this Court should suppress the ammunition-evidence seized. LCR 47-3.

### B. The government fails to establish probable cause for the residential search warrant.

#### 1. The government fails to establish probable cause for the target crimes of stalking, conspiracy to intimidate a public officer, and harassment.

"[S]peech may be deemed unprotected by the First Amendment as a 'true threat' *only* upon proof that the speaker *subjectively intended* the speech as a threat." *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005) (emphasis added). "[T]he element of intent is the determinative factor separating protected expression from unprotected criminal behavior." *United States v. Cassel,* 408 F.3d 622, 632-33 (9th Cir. 2005). "When specific intent is a required element of the offense" law enforcement "must have probable cause for that element in order to reasonably believe that a crime has occurred." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994).

The application and affidavits underlying the warrants here fail to establish Martinez "mean[t] to communicate a serious expression of an intent to commit an unlawful act of violence," *Virginia v. Black*, 538 U.S. 343, 359 (2003), against Mead or Dickerson. The Court in *Cassel* was clear—in light of *Virginia v. Black*: "We are [ ] bound to conclude that speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat." *Cassel*, 408 F.3d at 633

(9th Cir. 2005). "It makes no difference that the speech, taken literally, may have communicated a threat." *Fogel v. Collins*, 531 F.3d 824, 832 (9th Cir. 2008) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)).

In response, the government cites *Fogel*, 531 F.3d at 830, and notes references to Mead and Dickerson by name. ECF No. 40 at 14-15 (courts "consider whether the threatening speech targeted a specific individual"). But *Fogel* itself explains: "Even ostensibly threatening statements directed at specific individuals can be protected." 531 F.3d at 830. In *Bauer v. Sampson*, 261 F.3d 775, 780, 783-84 (9th Cir.2001), for example, the Court found a college professor's statement that "I, for one, have etched the name [of a district board member] and others of her ilk on my permanent shit list, a two-ton slate of polished granite which I hope to someday drop in [the new college president's] head" was protected speech. And the comments in *United States v. Bagdasarian*, 652 F.3d 1113, 1119-20, 1122 (9th Cir. 2011) about then-presidential candidate Barack Obama— including that he "will have a 50 cal in the head soon" and imploring others to "shoot the nig"—were deemed protected speech. Even the statement at issue in *Watts*, 394 U.S. at 707— "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."—"*literally threatened the life of the President*, yet the Supreme Court held that the First Amendment protected it as political speech." *Fogel*, 531 F.3d at 831 (emphasis added).

The comments here fall short of those held lawful in the above cases. Similar to *Bagdasarian*, Martinez expressed hope that Dickerson and Mead would die slow, painful deaths. ECF No. 36-8 at 13. But the post did "not convey the notion that [Martinez] himself had plans to fulfill" that hope, "either now or in the future." *Bagdasarian*, 652 F.3d at 1122. Similarly, his comment "I can't wait to see the news that Detective Kenneth Mead is in [a] casket," ECF No. 36-8

at 14, did not reflect Martinez's "intent to threaten that he himself would kill" Mead. *Bagdasarian*, 652 F.3d at 1122. In sum, Martinez's social media posts "fail[ed] to express any intent on his part to take any action" against Dickerson or Mead. *Bagdasarian*, 652 F.3d at 1123.

The context in which Martinez posted his expressions also demonstrate they were not "true threats." Martinez truly believed he was being harassed and persecuted by Mead, with the assistance of Dickerson. For example, Martinez posted that: Mead "followed me and even showed up to my other court hearings that he had nothing to do with in an attempt to sabotage my case by presenting Facebook posts to the judge and prosecutor," ECF No. 36-3 at 10, and "tried to make my life a living hell," ECF No. 36-3 at 21.

The government claims Martinez's subjective intent to threaten can be inferred from Mead and Dickerson's reactions to his social media posts. ECF No. 40 at 15. But if "culpability could be established by showing that a reasonable person would foresee that the statement would be interpreted by [the recipient] as a serious expression of an intention to inflict bodily harm," as the government urges, then "no actual intent to threaten must be shown." *United States v. Twine*, 853 F.2d 676, 680 (9th Cir. 1988) (citation and internal quotation marks omitted) (alteration in original). Of course, as the government elsewhere concedes, this single-pronged, objective-only analysis is not the standard. ECF No. 40 at 13 (acknowledging "both an 'objective' and 'subjective' test" applies to assess true threats, and asserting the subjective test "aligns more closely with [Nevada's] intent and knowledge requirements"). Such a standard would be "inconsistent with the conventional requirement for criminal conduct—*awareness* of some wrongdoing." *Elonis v. United States*, 575 U.S. 723, 737–38 (2015) (emphasis added) (citation and internal quotation marks omitted) (explaining that "[h]aving

7

liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—'reduces culpability on the all-important element of the crime to negligence'" (citation omitted)).

Here, again, *Bagdasarian* is instructive. In *Bagdasarian*, the Court carefully considered the two-pronged test for a "true threat." 652 F.3d at 1118–21. Only the first prong asks whether "the statement would be understood by people hearing or reading it in context as a serious expression of an intent" to harm. *Id.* at 1118. "This *objective test* requires the fact-finder to look at the entire factual context of the statements including: the surrounding events, *the listeners' reaction*, and whether the words are conditional." *Id.* at 1119 (cleaned up) (emphases added); *accord Fogel*, 531 F.3d at 831 ("The *objective standard* calls for an examination of the speech in the light of its entire factual context, including the surrounding events and *reaction of the listeners*." (cleaned up) (emphasis added)). But the second, subjective prong, asks whether "the defendant intended that the statement be understood as a threat," *Bagdasarian*, 652 F.3d at 1118, without concern for how observers would perceive the statement, *id.* at 1122; *see also Black*, 538 U.S. at 363 (acknowledging "cross burning's long and pernicious history as a signal of impending violence," but rejecting the act as prima facie evidence of intent because "a burning cross is not always intended to intimidate"). Thus, the government is incorrect to argue Mead and Dickerson's reactions support an inference of Martinez's intent.

The government's cited cases do not support its position. ECF No. 40 at 15 (relying on *Watts*, 394 U.S. 705, *Fogel*, 531 F.3d 824, and *United States v. Davis*, 876 F.2d 71 (9th Cir. 1989)). For example, in *Watts*, subjective intent was not at issue: "the Supreme Court examined the defendant's statement under the objective standard," *Bagdasarian*, 652 F.3d at 1127 n.6 (Wardlaw, J., concurring

8

in part), and declined to decide whether conviction required the speaker to subjectively intend "to carry [his threat] into execution," *Watts*, 394 U.S. at 707–08. Similarly, in *Davis*, the Ninth Circuit considered reactions "taken in response" to an alleged threat only in an objective analysis, expressly declining to consider whether the speaker "intended or was able to carry out the threat." 876 F.2d at 73.  Issued in 1969 and 1989 respectively, *Watts* and *Davis* simply did not address the subjective intent requirement imposed with the Supreme Court's 2003 decision in *Virginia v. Black* at all.  *See United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018) (explaining that "cases are not precedential for propositions not considered").

       Finally, though *Fogel* did briefly note that "[n]one of the officers [involved] interpreted Fogel's words or actions as threatening," *Fogel*, 531 F.3d at 832, this amounts to non-binding dicta, unnecessary to the Court's holding under the subjective test. *See United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("[W]e are not bound by a prior panel's comments made casually and without analysis, uttered in passing without due consideration of the alternatives, or done as a prelude to another legal issue that commands the panel's full attention"). *Fogel*'s full analysis makes clear the Ninth Circuit primarily considered and analyzed the import of listener reactions under the objective, reasonable person test. *Fogel*, 531 F.3d at 831-32 ("Applying the objective standard" and looking to "[t]he actions of the officers who actually saw the van and its message" to find "that reasonable people would not have understood—and did not understand—the speech as a true threat."). But to the extent *Fogel* improperly considered listener reactions to evaluate the speaker's intent, the case has been "effectively abrogated" and does not help the government here. *United States v. Bachmeier*, 8 F.4th 1059, 1064 n.2 (9th Cir. 2021) ("[O]ur precedents

requiring anything less than a subjective intent to threaten have been effectively abrogated.").

The reactions of Mead and Dickerson to Martinez's social media posts have no legal bearing on whether Martinez subjectively intended to threaten.[3]

### 2. LVMPD "training and experience" does not establish probable cause for unlawful firearm possession.

Martinez's motion showed the residential warrant lacked probable cause of unlawful firearm possession. *See* ECF No. 36 at 14-15. In response, the government unsuccessfully attempts to show probable cause by pointing to three things, each premised exclusively on LVMPD officers' training and experience. ECF No. 40 at 18-20.

*First*, an undated photograph, posted on Instagram, of Martinez holding what appears to be an AK-47 rifle. ECF No. 40 at 18. It is significant that the photograph is undated because Martinez did not become a prohibited person

---

[3] Further, the government's position defies common sense—objective inquiry into a *listener's* reaction to a statement offers no insight into the *speaker's* subjective intent. The well-settled distinction between objective, external facts versus subjective, internal purpose arises across various areas of the law. *See, e.g., In re Su*, 290 F.3d 1140, 1145 (9th Cir. 2002) ("Because the bankruptcy court focused exclusively on the objective substantial certainty of harm stemming from Su's driving, but did not consider Su's subjective intent to cause harm or knowledge that harm was substantially certain, we agree with the BAP that the bankruptcy court applied the incorrect legal standard."); *cf. Mitchell v. Sec'y, United States Dep't of Veterans Affs.*, No. CV 13-6030-ODW (CW), 2015 WL 13918040, at *4 (C.D. Cal. Nov. 24, 2015) (discussing constructive discharge theory of discrimination and explaining "[t]he standard is an objective one which focuses on a reasonable person's reaction to the working conditions and not the subjective intent of the employer"). The government offers no explanation for asking the Court to contradict this broadly recognized distinction, and Martinez can divine none.

until March 2019—less than two years before the search warrants were issued. Based on this photograph, the government assumes Sergeant Packe's statement that, in his experience prohibited persons tend to keep "coveted firearms for long periods of time" means "Packe was likely referring to the AK-47 because it was the only firearm described in the affidavit." ECF No. 40 at 18-19. But that is not what Sergeant Packe said, and the residential warrant was not limited to searching for an AK-47. *See* ECF No. 36-3 at 24, 28.

*Second*, speculation that Detective Jacob—based on his training and experience—was not required to believe Martinez's stepbrother, Lawrence Estrada, when he said the firearm he was seen carrying from the Las Vegas home to his car belonged to him not Martinez. ECF No. 40 at 19. But Jacob never said he disbelieved Estrada. Instead, he believed Estrada "may have moved *additional firearms or contraband* from the residence into the[ ] vehicles". ECF No. 36-4 at 5 (emphasis added). Further, the presence of Estrada's gun at the *Las Vegas* property cannot support probable cause to search for evidence of prohibited person in possession of a firearm at the *Moapa* property.

*Third*, the February 17, 2021, "molon labe" Facebook post. The government claims probable cause based solely on Sergeant Packe and Dickerson's "training and experience" to interpret the post as "indicat[ing] that Martinez possessed a firearm." ECF No. 40 at 18.

Although courts may rely on police officers' training and experience when assessing the totality of circumstances supporting probable cause, the affiant's training and experience cannot "substitute for the lack of evidentiary nexus" between the place searched and the alleged criminal activity. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). Collectively, this is insufficient to

11

establish probable cause to search Martinez's homes for evidence of firearm- and ammunition-related evidence.

### 3. Even if this Court finds LVMPD had probable cause to believe Martinez committed a crime, they did not have probable cause to search his homes.

The Ninth Circuit has held "[p]robable cause to believe that a suspect has committed a crime is not by itself adequate to secure a search warrant for the suspect's home." *United States v. Ramos*, 923 F.2d 1346, 1351 (9th Cir. 1991), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (citation omitted). A person's home receives special constitutional protections because "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *United States v. Nora*, 765 F.3d 1049, 1056-57 (9th Cir. 2014) (citation and internal quotation marks omitted). In this circuit and others, residential searches have been upheld only where some information links the criminal activity to the defendant's residence. *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (collecting cases). LVMPD had no information linking Martinez's homes to any criminal activity. Thus, even if this Court finds LVMPD had probable cause to believe Martinez committed one of the target crimes, it does not follow that they had probable cause to search his homes—"the most constitutionally protected place[s] on earth." *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008).

### C. The residential warrant is overbroad and cannot be saved by the doctrine of severance.

The residential warrant is overbroad, meeting each factor under *United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006):

12

*First*, probable cause did not exist to seize all items of a particular type described. The warrant allowed officers to search for a broad array of digital equipment. ECF No. 36-3 at 28. The government argues, because Martinez published his posts over the internet, "[c]ommon sense says that he stored electronic items of his crimes on digital storage devices (including phones) and kept the devices in his residence or sometimes in vehicles." ECF No. 40 at 20. But the government fails to explain why Martinez's posts and videos would have required him to utilize any digital equipment beyond a single cellphone. If this Court were to sever the purely speculative electronic items from the residential search warrant, all that could conceivably remain is Martinez's phone. *But see Section IV, below* (challenging cellphone search). The Fourth Amendment cannot justify a sweeping search of two residences simply to look for a phone.

*Second*, the warrant did not set out objective standards for executing officers to differentiate items subject to seizure from those which are not. The Las Vegas home was shared by six adults and three children and leased to Martinez's father, Felix. *See* ECF No. 36-3 at 24. Felix is also the owner of Martinez's home in Moapa. *Id.* But nothing in the search warrant enabled executing officers to differentiate between items belonging to Martinez—and therefore subject to seizure under the warrant—from items belonging to Felix or other occupants of the homes—which could not lawfully be seized.

*Third*, the affiant was able to describe the items more particularly in light of available information. The government's claim that the items to be seized under the residential search warrant could not have been described with more particularity, ECF No. 40 at 25, is belied by its own response. For example, the warrant allowed officers to search for "firearms," "ammunition," and related evidence. ECF No. 36-3 at 28. But the government concedes LVMPD had—at

best—probable cause to search only for an AK-47 rifle. *See* ECF No. 40 at 18-19 ("Packe was likely referring to the AK-47 because it was the only firearm described in the affidavit"). ECF No. 40 at 18-19. This disproves the government's claim that "the generic descriptions of firearms were sufficient because *no further information was available.*" ECF No. 40 at 25 (emphasis added). LVMPD could, and should, have narrowed the warrant to search only for an AK-47 and AK-47 ammunition.

The overbroad warrant cannot be severed. A reviewing court "take[s] into account the relative size of the valid and invalid portions of the warrant in determining whether severance is appropriate." *United States v. Sears*, 411 F.3d 1124, 1130 (9th Cir. 2005). For example, the Ninth Circuit "declined to sever and permit seizure of items that 'were only a relatively insignificant part of the sweeping search for evidence of any violation' of thirteen enumerated statutes. Yet severance was 'practicable' when 'only one of thirteen descriptions' was insufficiently particularized." *Sears*, 411 F.3d at 1130–31 (citations omitted). Here, any arguably valid portions of the residential search warrant are far outnumbered by the invalid portions. The overbroad warrant requires suppression.

**III.   The vehicle warrant is invalid as fruits of the poisonous tree.**

Because LVMPD were present at Martinez's Las Vegas home pursuant to the invalid residential warrant, any evidence obtained through their presence at the home could not be used to establish probable cause for the piggy-back warrant to search vehicles outside the home's curtilage. *See* ECF No. 36 at 23-24.

The government argues evidence seized from the vehicles is not fruits of the poisonous tree "because independent information provided probable cause to search the vehicles." ECF No. 40 at 27. Specifically, LVMPD officers surveilling

the home saw (1) Martinez's stepbrother carry a gun case from the home to his car, a white Nissan; and (2) Martinez leave the home in a separate vehicle at an unrelated time. *Id.* But "the exclusionary rule [ ] prohibits the introduction of derivative evidence . . . acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray v. United States*, 487 U.S. at 536-37 (1988) (quoting *Nardone v. United States,* 308 U.S. 338, 341, (1939)).

Beyond tangible evidence, the Fourth Amendment also prohibits use of "knowledge gained by the Government's own wrong," *Nardone*, 308 U.S. at 341 (citation and internal quotation marks omitted), such as improperly overheard statements or matters observed, *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). It is clear from the vehicle warrant affidavit that LVMPD were surveilling Martinez's Las Vegas home—via unspecified means—*in connection with executing the residential search warrant*. See ECF No. 36-4 at 4 ("Prior to the execution of the search warrant surveillance was established at Martinez residence 4420 Faberge Ave Las Vegas Nevada 89115"). Thus, the independent source doctrine does not apply. *See Murray*, 487 U.S. at 537-38. Even if the sightings of Martinez and his stepbrother were admissible, they do not establish probable cause to search the vehicles for evidence of the target crimes. As Martinez explained in his motion, the vehicle warrant application focused exclusively on the white Nissan but provided nothing connecting Martinez to that vehicle. ECF No. 36 at 22-23.

The vehicle warrant is fruits of the poisonous tree, and independently lacks probable cause, requiring suppression.

15

### IV. The cellphone warrant is invalid.

Martinez's phone was seized from the passenger seat of his father's car pursuant to a telephonic warrant obtained after his arrest. As Martinez explained in his motion, LVMPD lacked probable cause to arrest him; the evidence obtained from his phone is fruits of an unlawful arrest and must be suppressed. ECF No. 36 at 24. The government concedes probable cause for the arrest warrant was the same as probable cause for the residential search warrant. ECF No. 40 at 27. For the reasons explained in Section II.B., above, both warrants were invalid.

The cellphone warrant is separately invalid because it is overbroad. The government fails to address Martinez's overbreadth arguments. *Compare* ECF No. 36 at 24-26; *with* ECF No. 40 at 27-28. Instead, the government improperly submits Exhibits B and C for this Court's review, offering information not presented in the warrant affidavit. *Compare* ECF Nos. 40-2 and 40-3, *with* ECF No. 36-7 at 2-34. But as the government recognizes, the Court's review is limited to "the information within the four corners of the affidavit." ECF No. 40 at 17; *see Crowe v. Cnty. of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010). This Court should therefore reject the government's legally erroneous invitation to consider information not contained in the warrant when reviewing for probable cause.

Because the government failed to address the claim's merits, this Court should find the cellphone warrant overbroad. LCR 47-3. In any event, to the extent probable cause existed at all for a limited search of Martinez's phone, it only existed as to a limited set of data for a limited period of time. Yet the warrant here has no meaningful limitations or safeguards to cabin law enforcement's examination of Martinez's sensitive digital data. At bottom, whatever searches of Martinez's phone occurred are not susceptible to judicial

16

review, requiring suppression of all information obtained. *See United States v. Cardwell*, 680 F.2d 75, 78-79 (9th Cir. 1982) (ordering "total suppression" where "even the most specific descriptions (checks, journals, ledgers, etc.) [were] fairly general" and the affidavit did not "provide the information needed to limit the general nature of the warrant"); *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (suppressing all evidence where "none of the fourteen categories of seizable documents [in the search warrant] was limited by reference to any alleged criminal activity"). Finally, even if technically severable, severance is not appropriate as any evidence validly searched and seized constituted "only a relatively insignificant part of the sweeping search for evidence of any violation." *Sears*, 411 F.3d at 1130 (quoting *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986)).

## V.     The good faith exception does not apply.

Despite the lack of probable cause for the warrants, the government seeks to avoid suppression by claiming executing officers acted in good faith. ECF No. 40 at 28-29. The government acknowledges—but fails to carry—its burden to prove objectively reasonable reliance on the warrant. ECF No. 40 at 29. The good faith exception thus does not apply.

In *United States v. Leon*, the Supreme Court adopted an objective standard of good faith reliance, which comports with the Fourth Amendment generally. 468 U.S. 897, 922 (1984) (holding the exclusionary rule does not apply to evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant); *see Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police." (quoting *Beck v. Ohio*, 379 U.S. 89, 97 (1964))); *see*

17

*also Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (reiterating that "the ultimate touchstone of the Fourth Amendment is reasonableness" (citation and internal quotation marks omitted)).

The Court in *Leon* identified four situations that per se fail to satisfy the good-faith exception. 468 U.S. at 922. The government argues none applies because "a reasonable officer could believe" probable cause existed and "would [ ] conclude" the warrants were sufficiently particular because "generic descriptions of firearms" and related evidence is sufficient. ECF No. 40 at 29. The government's conclusory statements fall well short of showing that its officers' actions were objectively reasonable under the totality of the circumstances.

### A. The warrants' "bare bones" affidavits preclude good faith.

As relevant here, the good-faith exception does not apply when an affidavit is "bare bones," i.e., "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 922; *United States v. Underwood*, 725 F.3d 1076, 1087 (9th Cir. 2013). Because "in the circumstance of a bare-bones affidavit, the officer can never have a reasonable ground for believing the warrant had probable cause," a reviewing court need not consider extrinsic factors. *Underwood*, 725 F.3d at 1087.

The affidavits in support of the February Facebook warrant, the residential warrant, the vehicle warrant, and the cellphone warrant are bare-bones affidavits because they rely exclusively on Martinez's First Amendment protected speech and offer no substantive factual basis for the conclusion that he committed the target crimes. Where an officer has submitted a bare bones affidavit, the government "may not thereafter rely on the good faith of the

18

executing officers" to save the invalid warrant. *United States v. Michaelian*, 803 F.2d 1042, 1047 (9th Cir. 1986).

Even if these were not bare-bones affidavits, the government cannot show the good-faith exception applies under the totality of the circumstances. *See Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). Under the totality of the circumstances, as set forth in Martinez's motion and this reply, this Court should conclude the warrants were so lacking probable cause of any nexus to criminal activity or evidence that the good faith exception does not apply.

### B. The warrants' overbreadth precludes good faith.

The good faith exception also fails to apply when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922. As Martinez explained in his motion, the warrants here were so broad they violated the Fourth Amendment's particularity requirement. *See* ECF No. 36 at 15-26; *see also* Sections I.B., II.C., and IV., above.

## VI. Conclusion

As set forth in Martinez's motion and this reply, the search warrants lacked probable cause and were overbroad. The good faith exception is inapplicable, and the evidence seized must be suppressed.

DATED: November 10, 2022.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Joanne L. Diamond*
JOANNE L. DIAMOND
Assistant Federal Public Defender
Counsel for Joshua A. Martinez

19