**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

United States of America,

      Plaintiff,

  v.

Joshua A. Martinez,

      Defendant.

Case No. 2:21-cr-00219-APG-DJA

**REPORT AND RECOMMENDATION**

Defendant Joshua Martinez moves to dismiss the criminal indictment against him, arguing that the statute under which he is charged—the statute prohibiting convicted felons from possessing firearms and ammunition—is unconstitutional. (ECF No. 39). The Government filed an opposition to the motion on October 21, 2022. (ECF No. 42). Martinez replied on November 3, 2022. (ECF No. 45).

Martinez also moves to suppress evidence seized as a result of four search warrants of: (1) his residences; (2) vehicles on his properties; (3) his cellphone; and (4) his Facebook account. (ECF No. 36). The Government responded to Martinez's Motion on October 14, 2022. (ECF No. 40). Martinez replied on November 10, 2022. (ECF No. 46).

Because the Court finds that the statute under which Martinez is charged is constitutional, the Court recommends denying the motion. Because the Court finds that the affidavit in support of the four search warrants—other than categories 2-6 of the Facebook warrant—established probable cause for the searches, the Court recommends granting that motion in part and denying it in part. In his Reply in support of his Motion to Suppress, Martinez concedes that there are no material disputed issues of fact. (ECF No. 46). As such, the Court finds this matter properly resolved without an evidentiary hearing. LR 78-1.

1

## PROCEDURAL AND FACTUAL BACKGROUND

2     Martinez is charged in a four count Criminal Indictment with two counts of Felon in

3 Possession of a Firearm in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and two counts

4 of Felon in Possession of Ammunition in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

5 The charges result from the Las Vegas Metropolitan Police Department ("LVMPD") discovering

6 firearms and ammunition while executing a search warrant of Martinez's residences and vehicle.

7 LVMPD obtained and executed five search warrants—four of which are relevant to the instant

8 recommendation—while investigating Martinez for allegedly harassing and stalking LVMPD

9 detective, Kenneth Mead, among other crimes.  Those warrants authorized searches of

10 (1) Martinez's residences; (2) vehicles on the properties; (3) Martinez's cellphone; and (4)

11 Martinez's Facebook account.

12     The warrants and indictment resulted from LVMPD officers learning in early January of

13 2021 about a Facebook post Martinez made, stating:

14
15
16
17
> This is Detective Kenneth Mead with the Metropolitan Police Department.  He is an enemy of the constitution and has tried to make my life a living hell but has failed.  To any activist here in Las Vegas please keep an eye out for him.  I also have his resume just in case you want more intel on him.  Contact me for more information.

18     Below the statement were three pictures of Detective Mead.  The post had 12 comments

19 and 6 shares, including one stating: "This snowflake has a very punchable [sic] face".

20     LVMPD knew Martinez as an anti-government/anti-law enforcement activist who hosted

21 YouTube videos regarding "1st amendment audits."  Martinez posted numerous videos on that

22 YouTube account targeting law enforcement and other officials.  For example, Martinez

23 documented Southern Nevada Health District officials attempting to enforce COVID restrictions

24 and posted videos of him protesting certain trials involving individuals he supported at the Lloyd

25 D. George Federal Courthouse.  In certain of these videos, Martinez accused Detective Mead and

26 Deputy District Attorney Michael Dickerson—both of whom participated in prosecuting a state-

27 court criminal case against Martinez—of persecuting activists and making his activism more

28

difficult.  Martinez also referenced his criminal case—which concluded in 2019—in certain posts, accusing Mead and Dickerson of unfairly prosecuting him.

Facebook and YouTube users from around the country—many of whom were activists sharing Martinez's ideologies—commented on Martinez's posts and videos, supporting his allegations that Mead and Dickerson were targeting him.  One comment even provided more of Mead's personal information, accused Mead of terrorizing American citizens, and compared Mead's investigation of Martinez to international terror investigations.  This post had nearly 9,000 views.  It is one example of Martinez using his activist affiliations to bring attention to his perceived persecution by Mead.

Between December 2020 and the middle of January 2021, Martinez made numerous Facebook posts containing anti-government statements, often advocating violence against the government and law enforcement.  Some of these posts include veiled threats and obvious references to Mead.  On February 17, 2021, Martinez called LVMPD on its 311 non-emergency line and asked to speak with Mead.  Martinez asserted that Mead still had some of his property from Mead's investigation into Martinez's criminal case.  Martinez asked dispatch to contact Mead and have him call Martinez.  When dispatch contacted Mead, Mead advised the dispatcher that Martinez had previously made threats against him and requested that the phone call and any others from Martinez be flagged and sent to his supervisor.

Later that day, Mead's supervisor—who would become the affiant for the search warrant of Martinez's residences—searched Martinez's public Facebook account.  Mead's supervisor found a post from Martinez threatening Mead and Dickerson with, among other things, "a slow and painful death."  This post also contained a phrase—"Molon Labe"—interpreted by law enforcement and activists alike challenging Mead and Dickerson to come and take Martinez's firearms.  Both Dickerson and Mead stated they felt threatened by the posts and had taken steps to protect both them and their families.  While perusing Martinez's public Facebook account, Mead's supervisor also found an undated photo of Martinez—who was prohibited from possessing a firearm as a result of his state-court conviction—holding an AK-47 rifle.

Based in part upon the information outlined above, and additional information contained in the affidavit to support the search warrant, LVMPD detectives submitted a residential search warrant for Martinez's residences—one located in Las Vegas and one in Moapa—and any vehicles located at the residences during the searches.  A Clark County District Judge approved the warrant.  During these searches, LVMPD seized several weapons, ammunition and other information of evidentiary value.  LVMPD later sought two additional warrants—one for Martinez's Facebook account and another for his cellphone—based on virtually the same information contained in the residential search warrant along with a description of evidence found during those searches.  A Clark County District Court Judge also approved those warrants. Martinez now seeks suppression of the weapons and ammunition, and any evidence seized from the cellphone and the Facebook search.

## LEGAL STANDARDS AND ANALYSIS

### I.      The Court does not find that 18 U.S.C. § 922(g)(1) is unconstitutional post-*Bruen*.

Martinez, a convicted felon, brings an as-applied challenge to Section 922(g)(1) contending that his disarmament is inconsistent with the Nation's historical tradition of firearm regulations and is therefore unconstitutional under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  (ECF No. 39).  The Government responds that *Bruen* did not effectively overrule *Heller v. District of Columbia*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Ill*., 561 U.S. 742 (2010), which upheld the prohibition on possession of firearms by felons because the cases are clearly irreconcilable and that restricting the Second Amendment rights to law abiding citizens is well-rooted in the Nation's history of firearm regulation.  (ECF No. 42).  The issue before this Court is whether *Bruen*, in stating a new test for assessing constitutionality under the Second Amendment, repudiated *Heller*, *McDonald*, and other Ninth Circuit precedent regarding the constitutionality of Section 922(g)(1).

This Court finds that it can apply pre-*Bruen* precedent regarding the constitutionality of Section 922(g)(1) without running afoul of *Bruen*.  In *Bruen*, the majority stated that its holding is "in keeping with *Heller*."  *Bruen*, 142 S. Ct. at 2126.  Likewise, Justice Alito, writing in

concurrence, noted that *Bruen* "decides nothing about who may lawfully possess a firearm," and disturbed nothing from *Heller* "about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring). Justice Kavanaugh, writing in a concurrence joined by Chief Justice Roberts, reiterated that "the Second Amendment allows a 'variety' of gun regulations," including "presumptively lawful regulatory measures" such as "prohibitions on the possession of firearms by felons." *Id.* at 2162 (Kavanaugh, J., concurring). Justice Breyer, writing in dissent, stated that *Bruen* "cast[s] no doubt on" *Heller*'s treatment of laws prohibiting possession of firearms by felons. *Id.* at 2189 (Breyer, J. dissenting). Even before *Bruen*, the Ninth Circuit examined the historical tradition of gun regulation to conclude that Section 922(g)(1) is consistent with the Second Amendment. *See United States v. Vongxay*, 594 F.3d 1111, 1116–18 (9th Cir. 2010). This Court finds that *Bruen* is not clearly irreconcilable with the reasoning in *Heller* or *Vongxay*. Accordingly, these cases are not overruled by *Bruen*, and this Court is bound by that precedent.

Further, since *Bruen*, numerous courts in the Ninth Circuit and across the country have rejected challenges by criminal defendants to the constitutionality of Section 922(g)(1). Indeed, at least twenty-two district-court decisions have considered and rejected post-Bruen challenges to the constitutionality of Section 922(g)(1).[1] In keeping with these decisions, this Court now finds

---

[1] *See United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022); *United States v. Kimura*, No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022); *United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Williams*, No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022); *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27, 2022); *United States v. Perez*, No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022); *United States v. Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Delpriore*, No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022); *United States v. Hill*, No. 3:21-cr-107, Dkt. No. 70 (S.D. Cal. Sept. 20, 2022); *United States v. Rojo*, No. 3:21-cr-682, Dkt. No. 50 (S.D. Cal. Sept. 14, 2022); *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022); *United States v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022); *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022); *United States v. Doty*, No. 5:21-cr-21, Dkt. No. 34 (N.D. W.Va. Sept. 9, 2022); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Randle*, No. 3:22-cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022); *United States v. Ingram*, No. 0:18-cr-557, Dkt. No. 1714, 2022 WL 3691350 (D. S.C. Aug. 25, 2022); *United States v. Nevens*, No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal. Aug. 15, 2022); *United States v. Farris*, No. 1:22-cr-149, Dkt. No. 29 (D. Colo.

that the prohibition on the possession of firearms by felons found in Section 922(g)(1) does not violate the Second Amendment.  The Court thus recommends that the Motion to Dismiss be denied.

## II.   Probable cause exists for the search warrants.

There are four search warrants at issue: (1) the search warrant for Martinez's residences; (2) the search warrant for vehicles at those residences; (3) the search warrant for Martinez's Facebook; and (4) the search warrant for Martinez's cellphone. [2]  Probable cause exists to support all four search warrants Martinez seeks to suppress.  Probable cause exists when "under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "Probable cause determinations are 'commonsense, practical' questions, and a 'fair probability' is less even than a preponderance of the evidence.  *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)).  "Probable cause in a search warrant affidavit must be based on the material supplied by the affiant as well as 'reasonable inferences' drawn from the material."  *United States v. Bundy*, 195 F.Supp.3d 1170, 1174 (D. Or. 2016) (quoting *Gates*, 462 U.S. at 238).  Additionally, an issuing judge's probable cause determination "should be paid great deference by reviewing courts."  *Spinelli v. United States*, 393 U.S. 410, 419 (1969) (abrogated on other grounds by *Gates*, 462 U.S. at 213).

---

Aug. 12, 2022); *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022); *United States v. Ramos*, No. 2:21-cr-395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022); *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022).  The Southern District of Florida has also very recently considered the issue, finding that "*every federal judge* who has considered this question since *Bruen* has upheld the continued validity of § 922(g)(1)."  *United States v. Meyer*, No. 22-10012-CR, 2023 WL 3318492, at *1 (S.D. Fla. May 9, 2023) (emphasis in original).

[2] Martinez's brief also addresses a search warrant for Martinez's Facebook account issued in January of 2021.  (ECF No. 36 at 2-3).  However, the government has declined to defend that warrant.  (ECF No. 40 at 12).  The government adds that no information obtained from the January Facebook warrant was used to support the other warrants.  (*Id.*).  The Court will thus not address this warrant.  To the extent the government attempts to introduce evidence derived solely from the January Facebook warrant, that evidence would be inadmissible at trial.

### A.   Martinez's elements arguments are premature.

Much of Martinez's arguments are based on the premise that the warrants are unsupported by probable cause because the affidavits did not prove the elements of the target crimes.  For example, Martinez argues that the affiant failed to show that Martinez made a "true threat"—meaning that Martinez intended to cause harm to Mead or Dickerson—to support the crime of aggravated stalking.  Similarly, Martinez argues that the affiant never demonstrated that Mead accepted Martinez's alleged challenge to fight, which acceptance Nevada law requires for a person to commit the crime of challenge to fight.  But Martinez's arguments misapply the probable cause standard.  To show probable cause, an affiant must simply demonstrate that there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Martinez's arguments are instead based on the faulty premise that an affiant must prove that a defendant committed a crime before ever obtaining a warrant to investigate them for that crime.  The Court declines to decide Martinez's motion to suppress on these grounds.

### B.   The residential warrant.

The issuing judge had probable cause to issue the February 18, 2021 warrant for Martinez's residences—the first warrant in question—because the affidavit supporting that warrant demonstrates that, under a totality of the circumstances, there was a fair probability that law enforcement would find contraband or evidence of a crime in Martinez's residences.[3]  The affidavit details Martinez's activism, contains examples of Martinez's social media posts about his disdain for law enforcement's attempts to curtail that activism, and through those posts, demonstrate Martinez's general anti-government ideology.  The affidavit also contains Martinez's social media posts threatening Mead and Dickerson for their prosecution of him in his state case, which prosecution lead to a felony conviction prohibiting Martinez from possessing a weapon.

---

[3] The government asserts in its response that "Martinez did not move to suppress evidence obtained from the Moapa property."  (ECF No. 40 at 3 n.1).  Martinez points out in reply that his motion to suppress did address the Moapa property.  (ECF No. 46 at 4).  Regardless, the Court finds that the warrant affidavit contained sufficient probable cause for law enforcement to search both the Las Vegas and Moapa residences.

Martinez encouraged followers to contact him for further information about Mead, presumably so they too could take action against him.  The affidavit also details a telephone call from Martinez to LVMPD requesting to speak with Mead, even though his criminal case concluded well over a year prior.  When contacted about the call, Mead expressed concern, so much so he notified his supervisor (the affiant) and asked to flag the calls.  The affiant contacted Mead and Dickerson who both expressed concern and fear for their safety given Martinez's posts and history.  Finally, the affidavit contains information that Martinez posted photos of himself with an AK-47, something that would be a felony given his criminal record.

Given the totality of the circumstances and the information contained in the affidavit, it certainly is not unreasonable to believe that contraband or evidence of the crimes being investigated would be found at the residences.  Reviewing courts are to give great deference to the issuing judge's commonsense decision.  *Spinelli*, 393 U.S. at 419.  Given this deference, the issuing judge's inference that evidence would likely be found at the residences is reasonable.  And because the Court finds the affidavit established probable cause, it clearly has met the lower threshold of a fair probability.  As such, there is no constitutional violation and the evidence recovered during the search of the residences should not be suppressed.

### C.    The vehicle warrant.

The issuing judge also had probable cause to approve the vehicle warrant.  This warrant piggybacked on the residential warrant, having specifically incorporated the facts and information contained in the affidavit in support of the residential warrant.  The only additional facts in this warrant's affidavit were observations made by surveilling officers of the vehicles on the property and activity of individuals on the property placing and removing items from the vehicles.  Additionally, it contains information related to Martinez's arrest, including admissions by individuals living at the residence that weapons were inside the home and at least one of the vehicles.  Coupled with the probable cause supporting the residential warrant, the additional information provided in the second affidavit established probable cause to believe that law enforcement would find evidence of the crimes being investigated in the vehicles.  This is

especially true when evaluating the warrant with the deference the Court must use in analyzing the issuing judge's decision.

### D.    The cellphone and Facebook warrants.

The two remaining warrants at issue—one for Martinez's cellphone and one for his private Facebook account pages—are largely based upon the original affidavit for the residential search.  Each affidavit for these two warrants also includes information detectives obtained while arresting Martinez and the results of the residence and vehicle searches.  The affidavits include explanations why the affiants believed Martinez's phone and Facebook account would contain evidence of crimes.  These included references to Martinez's Facebook posts sharing Mead's personal information, comments from Martinez's like-minded activist Facebook friends, Martinez's requests that Las Vegas activists contact him directly regarding Mead and Mead's personal information, and the fact that Martinez took pictures of himself with weapons.  The Court has already determined that probable cause existed for the house and vehicle searches. Considering those affidavits together with the additional information contained in each of the affidavits supporting the phone and Facebook searches, the Court finds that probable cause supported the cellphone and Facebook account warrants.

The Court thus finds that there was probable cause to support all four search warrants in question, especially given the deference this Court must give to the issuing judge's commonsense decision in approving the warrants.

### III.    <u>Other than categories 2-6 of the Facebook warrant, the warrants are not overbroad.</u>

### A.    The warrants incorporated the affidavits.

Before addressing Martinez's contentions on the merit, the Court must conclude whether the warrants incorporated the affidavits supporting them.  *See United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) ("[o]nly after the content of 'the search warrant' is established…can the warrant be tested to see if it meets [the Fourth Amendment's] requirements.").  If it was incorporated, the Court evaluates the affidavit and the warrant as a whole, allowing the affidavit to "cure" any defects in the naked warrant.  *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009) (citing *Towne*, 99 F.2d at 544).  For a document to be considered part of a search

warrant, it must be (1) incorporated by reference to the search warrant and (2) accompany the search warrant both when it is authorized by the judge and when the search warrant is executed. *Towne*, 99 F.2d at 547-48; *see also SDI*, 568 F.3d at 699.  The Ninth Circuit noted that it remains "'rigid' in [its] insistence on both of these requirements" to "assure that the affidavit actually limits 'the discretion of the officers executing the warrant.'"  *Towne*, 997 F.2d at 548.

Additionally, the Ninth Circuit has found that absent any evidence that the affidavit accompanies or was attached to the warrant at the time the warrant was executed, the "fact that the warrant states that the affidavit is both attached and incorporated by reference is insufficient to permit us to conclude that the affidavit accompanied the warrant at the time of the search." *United States v. Hotal*, 143 F.3d 1223, 1225 (9th Cir. 1998) (citing *United States v. Van Damme*, 48 F.3d 461 (9th Cir. 1995)).  However, in *United States v. Turner*, the Honorable District Judge Kent. J. Dawson found *Hotal* and *Van Damme* distinguishable when analyzing a report and recommendation regarding a motion to suppress a warrant.  *See United States v. Turner*, No. 2:21-cr-00013-KJD-BNW, 2022 WL 195083, at *5 (D. Nev. Jan. 21, 2022).  There, Judge Dawson noted the warrant in *Hotal* did not specify the criminal activity suspected or any type of evidence sought and the warrant in *Van Damme* said "'SEE ATTACHMENT #1'…[b]ut nothing was attached." *Turner*, 2022 WL 195083, at *5.  But because the warrant at issue in *Turner* indicated the specific crimes alleged and the items to be searched and because the government asserted that the affidavits were attached in objecting to the report and recommendation, Judge Dawson found that he had sufficient grounds to find that the warrants incorporated and attached the affidavits.  *Id.*

Here, the Court finds, for the purpose of this report and recommendation, that the affidavits are incorporated into the search warrant.  Neither the government nor Martinez address the issue of whether the affidavits were incorporated and attached to the warrants.  However, the residential and Facebook warrants specified that the affidavits were "attached hereto and incorporated herein by reference."  (ECF No. 36-3 at 28); (ECF No. 36-7 at 29).  Given these statements and the parties' silence on the issue, the Court has no reason to believe that the affidavit was not incorporated into and attached to the Facebook and residential warrants.

Additionally, the residential and Facebook warrants, although they did not indicate the specific crimes alleged, indicated the items to be searched, making them distinguishable from the warrants in *Hotal* and *Van Damme.*

Whether the cellphone and vehicle warrants incorporated the affidavits is a closer question, but the Court ultimately finds that they did. The cellphone warrant provides that the affidavit is "attached hereto" but it does not provide that the affidavit was incorporated. Similarly, in the telephonic vehicle warrant, the affiant references the underlying affidavit—which the issuing judge had signed the day before—and the judge indicated that he recalled the warrant.[4] While they contained less language regarding attachment and incorporation than the residential and Facebook warrants, the Court notes that the cellphone and vehicle warrants indicated the specific crimes alleged and the items to be searched. The telephone vehicle warrant also provides independent grounds on which to search the vehicles: the affiant's observations of individuals leaving the Las Vegas residence and taking items—including a gun case—to the vehicles parked outside. And again, neither side addresses this point. The Court thus finds that, for the purposes of its analysis, the residential, vehicle, Facebook, and cellphone warrants incorporated the affidavits.

### B. Legal standard for overbreadth.

"A warrant is overbroad if it fails to establish 'probable cause to seize the particular thing[s] named in the warrant,' and courts will invalidate warrants 'authorizing a search which exceeded the scope of the probable cause shown in the affidavit.'" *United States v. Martinez*, No. 19-cr-00662-JSW-1, 2020 WL 3050767, at *5 (N.D. Cal. June 8, 2020) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991)). Courts consider three factors in analyzing whether a warrant is overbroad:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective

---

[4] The Court notes that the Ninth Circuit has not "defined precisely what verbiage is suitable for [the purpose of expressly incorporating an affidavit]." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699-700 (9th Cir. 2009).

standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available.

*Flores*, 802 F.3d at 1044.

Under the first factor, probable cause exists when "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Luong*, 470 F.3d at 902 (internal quotations omitted). Under the second, the Ninth Circuit considers an affidavit to be part of a warrant, and therefore potentially curative of any defects if the warrant (1) expressly incorporated the affidavit by reference; and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search. *SDI Future Health, Inc.*, 568 F.3d at 699. And under the third, specific, technical language is not expected in warrants, which are often drafted by nonlawyers in the midst and haste of a criminal investigation. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983); *see Turner*, 2022 WL 195083, at *6 (finding the *Illinois v. Gates* analysis—which the Supreme Court had applied to the *Spinelli v. U.S.*, 393 U.S. 410 (1969) two-factor test—to be applicable to and persuasive in determining the third factor of the overbreadth analysis).

Applying these factors and considerations to the residential, vehicle, cellphone, and Facebook warrants, the Court finds that the residential, vehicle, cellphone, and categories 1 and 7 of the Facebook warrant are not overbroad. The Court finds that categories 2-6 of the Facebook warrant are overbroad.

### A.     *The residential warrant is not overbroad.*

1.     <u>Probable cause.</u>

Martinez challenges two categories:

(1) "[d]igital or physical items indicating planning, ideology, and/or preoperational surveillance to include maps, drawings, concert tickets, hotel room reservations, and receipts, notes, pictures (digital or physical), cameras, video recorder, or digital media, flash drives, an[d] computers, hard drives, laptops, cellular telephones, and tablets which may contain such items"; and

(2) "articles of personal property which would tend to establish the identity of persons in control of said premises…including but not limited to keys, canceled mail envelopes, rental agreements and receipts, utility and telephone bills, prescription bottles, vehicle registration, vehicle repairs and gas receipts[,] [i]tems which tend to show evidence of motive and/or the identity of the perpetrator such as photographs and undeveloped film, insurance policies and letters, addresses and telephone records, diaries, governmental notices…[o]bjects which bear a person's name, phone number, or address."

The Court finds that the warrants established probable cause for these two categories. While the categories did not describe Martinez's ideology, what plans he might have, or why Martinez might have used his phone rather than other digital devices, the affidavit provides sufficient context. Those facts describe Martinez's ideology as an anti-government/anti-law enforcement activist, provide context for that ideology by quoting Martinez's public Facebook posts, and explain that Martinez has been targeting Mead and Dickerson. Additionally, just because the second category sought evidence of "motive and/or the identity of the perpetrator," does not mean the warrant allowed LVMPD to look for evidence of other crimes committed by other individuals as Martinez argues. The affidavit in support of the warrant clearly identified Martinez as the alleged perpetrator and identified aggravated stalking, harassment, stalking with use of the internet, and challenge to fight involving use of a deadly weapon as the crimes for which the warrant sought a motive. As a whole, the warrant established probable cause for each of the categories to which Martinez objects.

## 2. Objective standards.

The Court finds that the residential warrant, considered together with the affidavit, sets forth the objective standards by which officers could determine what was subject to seizure. The affidavit—which was incorporated by reference and attached to the warrant—provides objective standards for each category. Regarding the category of firearms and related items, the affidavit explains that Martinez is prohibited from having any form of firearm. It also provides that Martinez had posted numerous photos and videos on his Facebook showing him within the curtilage of the Las Vegas residence, leading officers to believe that Martinez primarily resided there. The affidavit also notes that Martinez's father owned the Moapa residence and that

detectives physically witnessed Martinez on the property, had seen several Facebook posts in which Martinez stated that he used the property, and witnessed Martinez enter and exit the residence and structures on the property.  The warrant thus appropriately authorized officers to seize all firearms and related items in the residences.

Regarding the category of digital or physical items that could indicate planning or ideology, the affidavit provided sufficient examples of Martinez's ideology, identified the individuals—Mead and Dickerson—against whom Martinez had made the alleged threats, identified the method by which Martinez had shared Mead's personal information with others, and identified Mead and Dickerson fearing for their safety and the safety of their families.  By doing so, the affidavit provided examples and indications of the type of information within the warrant's purview.  For example, maps of Mead or Dickerson's homes or workplaces would clearly fall into this category while maps of a state park would not.

Although Martinez argues that officers could have seized items belonging to the one of the six other occupants in the Las Vegas residence, he provides no authority, and the Court is aware of none, that ownership of an item should define the contours of a warrant.  Martinez's argument is based in part on the premise that, if officers found an item tending to establish the identity of the person in control of the premises—for example, a gas bill—they would have to ask whether the gas bill belonged to Martinez or someone else before seizing it.  But this approach would be unworkable, particularly because the ownership of the items Martinez points out—in particular, photographs, undeveloped film, addresses and telephone records, diaries, governmental notices, and objects bearing a person's name, phone number, or address—may not be apparent from their face.  The Court thus finds that the residential warrant set forth objective standards by which the LVMPD could differentiate items subject to seizure from those which were not.

> 3.   Particularity.

Martinez argues that the affidavit could have described the items to be seized more particularly by limiting items like maps, photos, notes, and diaries to those which mentioned, depicted, or referenced Mead and Dickerson.  Martinez adds that the affidavit could have more

particularly described an AK-47 rifle and related items, rather than just "firearms" and related items.  But, the Court has already found that the affidavit incorporated into the warrant provides the particularity that Martinez describes.  Although the affiant could have described the items sought by the residential warrant more particularly, coupled with the affidavit, the warrant was not so non-specific as to be overbroad.

### B.   The vehicle warrant is not overbroad.

#### 1.   Probable cause.

The Court finds that the categories of items sought by the vehicle warrant are supported by probable cause. [5]  The telephonic warrant references the affidavit in support of the residential warrant.  And although it is unclear from the exhibits whether that affidavit accompanied the warrant, Martinez has not argued, and the Court has no reason to believe that the affidavit did not accompany the warrant while LVMPD executed the vehicle search.  That affidavit identified Martinez as being a felon prohibited from possessing a firearm and as residing primarily in the Las Vegas residence.  Moreover, the telephonic affidavit provided sufficient independent probable cause to support the categories of items sought to be seized.  In the course of obtaining the telephonic search warrant for the vehicle, the affiant explained that, while conducting surveillance on the Las Vegas residence, officers had observed Martinez's stepbrother take a gun case from inside the residence to the vehicle at issue: a white Nissan Versa.  Although Martinez argues that the warrant lacked probable cause because it provides that his stepbrother told officers that he owned the gun and not Martinez, the affiant also noted that it is common for individuals living with prohibited persons to move contraband for those prohibited persons.  Taking the residential affidavit together with the telephonic affidavit, there was sufficient probable cause for

---

[5] Martinez also argues that, because the residential warrant—on which warrant the vehicle warrant piggybacked—was invalid, the Court should suppress anything seized from the vehicle under the fruit-of-the-poisonous-tree doctrine.  However, the Court has concluded not only that the residential warrant was supported by probable cause, but also that it was not overbroad. Because the Court has determined that the residential warrant was valid, the fruit-of-the-poisonous-tree doctrine does not apply to exclude the evidence seized under the vehicle warrant.

LVMPD to seize each of the categories in the warrant including: firearms and related items, telephones which the affiant asserted persons often use in conspiracies to commit the target crimes, and property which would establish who owned the items seized.

              2.       Objective standards and particularity.

The Court finds that the vehicle warrant both set forth objective standards by which law enforcement could distinguish items subject to seizure and was sufficiently particularized. The warrant authorized seizure of all firearms and related items, cellphones and digital devices, and personal property items that would identify the owner of the items seized. These categories were inherently limited by the types of items sought and the limited space of the place searched: the cars listed in the warrant. And, as discussed above, the affidavits referenced and included provided probable cause to seize these items.

**C.**      **The cellphone warrant is not overbroad.**

              1.       Probable cause.

The Court finds that the categories of items the warrant authorized LVMPD to seize are supported by probable cause. The cellphone warrant sought digital records or device data constituting evidence of the target crimes and tending to establish ownership of the phone. The cellphone warrant attached an affidavit describing why the affiant believed that Martinez had committed the target crimes and examples of the types of evidence that would fall within the warrant's purview. The Court thus finds that the categories in the cellphone warrant were supported by probable cause.[6]

---

[6] Martinez also argues that the fruit-of-the-poisonous-tree doctrine operates to suppress items seized by virtue of the cellphone warrant because it is based on the same affidavit that supported the arrest warrant. To support this argument, Martinez again asserts that the affiant did not establish the elements of the target crimes, like a "true threat" for aggravated stalking or acceptance for a challenge to fight. But this argument is again based on the faulty premise that law enforcement must be able to prove the elements of a crime before applying for a search warrant to investigate that crime. The Court does not find that the fruit-of-the-poisonous-tree applies on these grounds.

1          2.     Objective standards.

2          The Court finds that the warrant, taken as a whole together with the affidavit, establishes

3    sufficiently objective standards by which LVMPD could determine what to seize.  The attached

4    affidavit described Martinez's activism, his interactions with Facebook friends sharing his anti-

5    government ideology, his Facebook posts regarding Mead and Dickerson, and his reference to

6    firearms and picture holding one.  The affidavit not only gave executing officers sufficient

7    context to decide what data in the phone would constitute evidence of the target crimes, it listed

8    examples of the data.

9          3.     Particularity.

10          While law enforcement could have more particularly described the items to be seized, the

11   Court finds that the descriptions are not so generic as to render the warrant overbroad. [7]

12   Martinez chooses the broadest language of the warrant on which to focus his argument, ignoring

13   that the warrant does not authorize LVMPD to search *all* "digitally stored records of user and/or

14   device data."  Instead, the warrant provides that LVMPD may only search that data which:

15   (1) demonstrates Martinez's involvement in aggravated stalking, stalking with the use of the

16   internet, harassment, and own/possess gun by prohibited person occurring from February 17,

17   2021 through February 19, 2021; and (2) establishes whether Martinez or someone else owned or

18   controlled the phone.  Martinez also ignores the fact that the warrant attaches an affidavit

19   describing the stalking, harassment, and circumstances under which law enforcement came to

20   believe Martinez was in possession of a firearm.  Taken as a whole, the cell phone warrant

21   sufficiently particularly describes the items to be seized and is not overbroad.

22

23

24

25   ─────────────────
26   [7] In his reply, Martinez points out that the government attached two exhibits to its response
     regarding the cellphone warrant that were not presented in the warrant affidavit.  The Court is
27   "limited to the information and circumstances contained within the four corners of the underlying
     affidavit" and thus does not consider the government's attached exhibits.  *See Crowe v. County of*
28   *San Diego*, 608 F.3d 406, 434 (9th Cir. 2010).

### D.    Categories 2-6 in the Facebook warrant are overbroad.

1.    Probable cause.

The Court finds that probable cause did not exist to seize all items of each category

described in the Facebook warrant.  That warrant authorized LVMPD to seize:

> 1.    Records concerning the identity of Facebook user ID number 100055990480014…to include name, address, email address, date of account creation, IP address at account sign up, and any other personally identifying information
> 2.    Logs showing IP addresses and dates stamps for account access for [the Facebook ID].
> 3.    The contents of private messages in the user's inbox for [the Facebook ID]
> 4.    The contents of sent mail and trash folders for [the Facebook ID]
> 5.    The current and deleted Facebook statuses for [the Facebook ID]
> 6.    The stored user files including photos, videos, and Facebook posts[] [a]s well as current and deleted blog content for [the Facebook ID]
> 7.    The check-in statuses depicting the user[']s location from 10/13/2018 to 02/22/2021 for [the Facebook ID]

(ECF No. 36-7 at 29-30).

The Court finds that there was probable cause to seek these categories of information.

The Ninth Circuit's decision in *United States v. Flores* stands for the proposition that probable

cause supports a Facebook warrant under the overbreadth analysis when that warrant "allow[s]

the government to only search the Facebook account associated with [the defendant's] name and

email address, and authorized the government to seize only evidence of violations of [the

enumerated crimes]."  *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015).  The

Facebook warrant here is like the warrant in *Flores* because it is limited to Martinez's account

and authorized the government to seize "evidence which tends to demonstrate that the criminal

offense of Aggravated Stalking, Stalking with use of Internet, and Harassment (2 counts),

Own/Possess Gun by Prohibited Person has been committed."  (ECF No. 36-7 at 4) (emphasis

omitted).  Given that probable cause only requires a fair probability that evidence will be found in

a particular place, the deference the Court must give to the issuing judge, and the fact that the

warrant incorporated and attached an affidavit providing examples of Martinez's activism taking

1  place largely on Facebook, the Court finds that probable cause supported the categories of

2  information in the warrant.

3           2.       Objective standards.

4           Despite the Court's finding that the categories in the Facebook warrant were supported by

5  probable cause, other than for categories 1 and 7, the Court does not find that the Facebook

6  warrant provided objective standards by which executing officers could differentiate items subject

7  to seizure from those which were not.  As a preliminary matter, the Court finds that category 1

8  contains sufficient objective standards because the Ninth Circuit has long held that officers may

9  properly seek information to identify the person who controls the place to be searched.  *Ewing v.*

10 *City of Stockton*, 588 F.3d 1218, 1229 (9th Cir. 2009) ("[T]his court has long upheld warrants

11 containing such language.").  Category 1 also provides examples of the types of information

12 sought, including: "name, address, email address, date of account creation, IP address at account

13 sign up, and any other personally identifying information."  (ECF No. 36-7 at 3).  Category 7

14 provides a time limit—from October 13, 2018 to February 22, 2021—and only authorizes law

15 enforcement to seize check-in statuses which depicted the user's location.

16          However, the remaining categories lack objective standards.  As Martinez points out by

17 referencing the Eleventh Circuit's decision in *United States v. Blake*, a search of a Facebook

18 account typically differs from a traditional search because Facebook can search an account and

19 provide precise data for law enforcement.  *See United States v. Blake*, 868 F.3d 960, 974 (11th

20 Cir. 2017).  While *Blake* is not binding on this Court, it is instructive of the types of objective

21 standards possible for Facebook warrants such as asking Facebook to provide messages sent to

22 specific individuals or requesting data from a specific time period.  *See id.*  The Ninth Circuit's

23 decision in *Flores* provides an example of another limit.  *See Flores*, 802 F.3d at 1044.  The

24 *Flores* court found that, because the warrant established "Procedures for Electronically Stored

25 Information," it provided executing officers with objective standards for segregating responsive

26 material from the rest of the defendant's account.  *See id.*  The *Flores* court also noted that

27 Facebook, rather than the government, segregated the defendant's account.  *See id.* at 1045.

28

Here, the Facebook warrant contains none of the objective standards outlined in *Flores* or *Blake*.  The Facebook warrant does not specify the two-step process identified by *Blake* and *Flores* in which Facebook first segregates responsive data and then provides it to the government.  Nor does it provide any procedures for law enforcement to search the information received from Facebook.  And other than category 7 seeking check-in statuses, the categories in the warrant lack any limits on the time frame or topics of communications, posts, photos and videos they authorized law enforcement to seize.  This is particularly concerning because neither the government nor Martinez explain how long Martinez has had his Facebook account.  Without any objective standards, like limits on time or topics, the warrant could authorize law enforcement to seize many years of data.

3.      Particularity.

For the same reasons that the Court finds that the Facebook warrant lacked objective standards, the Court does not find that—other than category 1 and 7—the categories in the warrant were sufficiently particular.  Not only did the warrant categories lack topic limitations, but they also lacked timeframe limitations.  Lacking both, the Court cannot find that the warrant topics were sufficiently particular.  *See Flores*, 802 F.3d at 1044 (finding that five or six years of data from a Facebook account "may have been excessive," although ultimately concluding that the court did not need to determine the warrant's overbreadth); *see United States v. Mattingly*, No. 2:21-cr-00230-APG-VCF, 2022 WL 1193279, at *5 (D. Nev. Feb. 18, 2022) (finding that a Facebook warrant was not overbroad because it allowed the government to search only the account associated with the suspect's name, specified a specific crime, and contained a reasonable temporal limitation of sixty days prior to and following the issuance of the warrant); *see Turner*, 2022 WL 195083 at *6 (finding that a Facebook warrant that was limited to a time period of June 5, 2020 to August 4, 2020 was sufficiently particular as to not be overbroad).  The Court thus finds that categories 2, 3, 4, 5, and 6 are overbroad.

**IV.    Other than categories 2-6 of the Facebook warrant, the warrants fall under the good faith exception.**

"Evidence seized pursuant to a facially valid search warrant that later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant." *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (citing *United States v. Leon*, 468 U.S. 897, 926 (1984)).  The good faith exception does not apply, however,

> (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandon[s] his [or her] judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013) (internal quotations omitted).

"The government bears the burden of proving that reliance upon the warrant was objectively reasonable." *Kow*, 58 F.3d at 428.  Regarding the third instance when the good faith exception does not apply, an affidavit is so lacking in indicia of probable cause when it fails to provide a colorable argument for probable cause.  *Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).  A colorable argument is when "thoughtful and competent judges" could disagree that probable cause does not exist.  *Id.*

Regarding the fourth instance when the good faith exception does not apply, in the Ninth Circuit, "[a]s a rule," if a warrant is facially overbroad, "an objectively reasonable belief in its validity will be impossible." *Towne*, 997 F.2d at 549.  This is so because "officers attempting to execute a warrant so facially overbroad that it precludes reasonable reliance will recognize, even after the warrant leaves the hands of the magistrate, that it fails to offer guidance." *Id.*  The Ninth Circuit has further explained that "[r]equiring that an officer know when a warrant is facially overbroad to this degree presents little burden." *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir. 1989).  Accordingly, the Ninth Circuit is "vigilant in scrutinizing officers' good faith reliance

on such illegally overbroad warrants." *Id.*; *see also United States v. Stubbs*, 873 F.2d 210 (9th Cir. 1989) (good faith exception inapplicable to overbroad warrant that lacked probable cause to seize all documents allowed to be seized, did not provide objective standards by which executing officers could determine what could be seized, and should have been more specific).

Here, the Court does not find that the good faith exception saves categories 2, 3, 4, 5, and 6 of the Facebook warrant because they are not particularized. The Facebook categories authorized law enforcement to seize *all* of Martinez's log in activity, private messages, sent mail and trash folders, current and deleted statuses, photos, videos, posts, and blog content from the time he created his account until the officers executed the warrant. The warrant also appears to authorize law enforcement to seize all the information that Facebook segregated, without providing any limitations on the information Facebook was to segregate. The Court thus finds that the good faith exception does not apply to categories 2, 3, 4, 5, and 6 of the Facebook warrant.

However, to the extent the remainder of the Facebook, residential, cellphone, and vehicle warrants are invalid, the Court finds that the officers conducting the search acted in good faith and reasonable reliance on the warrants. The four instances the Ninth Circuit has identified as not falling under the good cause exception do not apply here. First, Martinez does not argue, and the Court has no reason to believe that the affiant for the warrants recklessly or knowingly placed false information in the affidavit. Second, the Court also has no reason to believe that the issuing judge abandoned his judicial role. Third, the warrants were supported by affidavits demonstrating probable cause. As outlined above, the affidavits established more than a colorable argument for probable cause. The affidavits described Martinez's activism, his posts regarding Mead and Dickerson, his references to "Molon Labe," his photo with a firearm, and his references to the death of law enforcement and government officials generally and Mead and Dickerson specifically. And at least two judges—the issuing judge and the undersigned—believe that these affidavits established probable cause. Fourth, the Court does not find that the warrants—other than the Facebook warrant—are so facially deficient that officers could not presume them to be valid. While the Court has acknowledged that, in some instances, the warrants could have more

particularly described the items to be seized, the warrants are not so deficient that the executing officers relied on them unreasonably.

### CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that Defendant Martinez's Motion to Suppress Evidence (ECF No. 36) be GRANTED IN PART and DENIED IN PART.  It is recommended that the Motion to Suppress be granted in part regarding evidence seized under categories 2, 3, 4, 5, and 6 of the Facebook warrant.  It is recommended that the Motion to Suppress be denied in part regarding evidence seized under the residential warrant, the cellphone warrant, the vehicle warrant, and categories 1 and 7 of the Facebook warrant.  IT IS FURTHER RECOMMENDED that Defendant Martinez's Motion to Dismiss (ECF No. 39) be DENIED.

### NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: May 22, 2023

_____
DANIEL J. ALBREGTS.
UNITED STATES MAGISTRATE JUDGE