JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
DANIEL R. SCHIESS
Assistant United States Attorney
Nevada Bar No. 5483
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
dan.schiess@usdoj.gov

*Representing the United States of America*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| **United States Of America,** | Case No. 2:21-cr-00219-APG-DJA |
| Plaintiff, | **Government's Response To Defendant's Sentencing Memorandum, ECF No. 90** |
| V. | |
| **Joshua A. Martinez,** | |
| Defendant. | |

**CERTIFICATION: This response is timely filed.**

## I.   INTRODUCTION

Joshua Martinez threatened to kill the deputy district attorney and detective involved in his state felony conviction. A threat investigation lead to the discovery of firearms and ammunition in Martinez's Las Vegas residence and Moapa property. After being indicted on felon in possession of a firearm and ammunition charges, Martinez was released on conditions of pretrial release, including home detention and GPS monitoring, both to reduce the risk of danger that he presented to the prosecutor and detective.

Eventually, Martinez he pled guilty to one count of possession of a single firearm – one capable of accepting a large capacity magazine. The nature and circumstances of Martinez's offense, his history and characteristics, the need for the sentence to reflect the seriousness of the offense, and other 3553(a) factors, support a sentence within the applicable Sentencing Guideline range. But Martinez seeks a sentence of time served and one-year of supervised release. His argumets fail to account for the full scope of the 3553(a) factors.

## II. PROCEDURAL HISTORY

Martinez was charged on September 1, 2021, in a four-count federal indictment with being a felon in possession of firearms and ammunition. ECF 1. Martinez was then released on a personal recognizance bond subject to pretrial release conditions, including home detention in Moapa, Nevada, and GPS monitoring. ECF 13. The Court found that Martinez presented a risk of danger to the prosecutor and detective. ECF 6 and 13.

The home detention condition provided an exception for employment, allowing Martinez to travel within six miles of his home for times he was permitted to leave his home, and to travel to Las Vegas under strict limits for matters related to his case and his family. ECF 13. Martinez filed four motions to modify his release conditions. Only slight modifications were made.

Martinez pled guilty on August 17, 2023, to count two of the indictment charging him with felon in possession of a firearm.

Ten total stipulations to continue the trial and sentencing were filed. Eight of the stipulations were solely for Martinez's benefit.

### III. FACTUAL STATEMENT

For years Martinez had engaged in anti-government and anti-law enforcement activities. He identified a First Amendment Auditor, that is, someone who created confrontational situations with law enforcement officers or other public authority to create video recordings for social media, such as YouTube channels. Martinez has a long criminal history that spans nearly twelve years, and includes of violence. Additionally, he was convicted twice of crimes stemming from his conduct at the Lloyd D. George Federal Courthouse, each arising out of his anti-law enforcement ideologies: (1) in 2017 for Obstructing and providing false information to a police officer, in connection with his attempt to enter the Lloyd D. George Federal Courthouse without proper identification; and (2) in 2018 for creating a disturbance of federal property, again involving his attempt to enter the Lloyd D. George Federal Courthouse without proper identification.

Martinez came into contact with the prosecutor and detective no later than 2017 when the prosecutor prosecuted Martinez for attempt carrying concealed firearm or other deadly weapon (a felony), and the detective went to court once to help the prosecutor. Martinez has since held a grudge against them.

Martinez pled guilty to the state charge in 2019, and a month later his probation was revoked. The revocation stemmed from officers finding firearms and contraband in Martinez's house during a home verification visit. They found firearms, a glass jar containing marijuana residue, and a box of "P-Sure synthetic urine located in Martinez's bedroom. During Martinez's sentencing hearing, the court learned that Martinez had posted several times on Facebook posts glorifying the killing of police officers. ECF 40 at 3. One post contained a picture of a police funeral and a statement implying cops should die. *Id.*

Martinez continued to post violent messaging directed toward law enforcement. On December 9 and 22, 2020, and on January 2, 6 and 7, 2021, he posted pictures advocating violence toward law enforcement officers and public authorities. In the December 9, 2020, and January 6, 2021 posts, he posted statements advocating violence specifically toward the detective. ECF 40, pp. 4-5.

Martinez also posted death threats against the prosecutor and detective on February 17 and 18, 2021. Late on February 17, Martinez called LVMPD on its 311 recorded line to speak with the detective about personal property he claimed the detective had taken from him. *Id*. at 5-6. A few minutes later, Martinez posted to his Facebook page a picture of the prosecutor in a court setting with the following statement: "This is [the prosecutor]. He is [the detective's] Bitch. [Prosecutor], I hope YOU and [the detective] die a slow and painful death. I hope your family witness [sic] it. [Detective], I have a message for you (Molon Labe)." *Id*. at 6. According to a now-retired LVMPD sergeant, Molon Labe is a classical Greek phrase meaning "come and take it (them)," and is used by present-day gun rights advocates as a challenge to perceived attempts by the government to confiscate firearms. *Id*. According to the sergeant, it was reasonable to believe that Martinez used the language to provoke a confrontation with the detective. *Id.* at 6-7.

An hour or so after Martinez posted the Molon Labe threat, he posted on Facebook a statement saying "I cant [sic] wait to see the news and hear that [the detective] is in the casket," along with he posted a picture of nine police officers carrying a flag-draped coffin. *Id.* at 7. On February 18, 2021, LVMPD executed search warrants on Martinez's residences in Las Vegas and Moapa, and seized numerous firearms and ammunition. At the same time, Martinez was arrested on state charges of aggravated stalking (felony),

stalking with use of the internet or electronic communication (felony), and ownership or possession of firearm by prohibited person (felony). Later, Martinez was charged in federal court with the firearm and ammunition charges.

## IV. ARGUMENT

The 3553(a) factors compel a Guideline sentence. In particular the factors addressing the nature and circumstances of the offense, the defendant's history and characteristics, and the need for the sentence to reflect the seriousness of the offense weigh heavily in favor of a Guideline sentence.

**A. The 3553(a) Factors Compel a Guideline Sentence.**

In imposing sentence, the Court must consider the 3553(a) factors. They include, among others:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant….

18 U.S.C. § 3553(a). The nature and circumstances of the offense here reflect serious and dangerous criminal activity. Martinez used the firearm of his conviction in relation to his threats against the prosecutor and detective.[1] To be sure, he directed the Molon Labe

---

[1] The plea agreement did not include a two-level adjustment under § 2K2.1(b)(6)(B) for "use[] or possession [of] any firearm or ammunition in connection with another felony." The government is not arguing for the adjustment under this guideline provision and urges the Court not to include the adjustment.

phrase towards the detective and followed up minutes later by posting a picture of nine police officers carrying a flagged-draped coffin along with his statement that he can't wait to see the news and hear that the detective is in the casket. He made other threatening statements.

The threatening statements were not one-offs. Even before he posted the Molon Labe post and the coffin post, Martinez posted in December 2020 a threatening statement directed toward the detective, and in December 2020 and January 2021 he posted statements directed generally toward law enforcement and other public officials, some implying death. He knew better than to do so. His state probation had been revoked in 2019 in part because he had posted similar statements. Martinez's revocation should have tempered him – it only seemed to have aggravated him more.

There is more. Martinez's anti-law enforcement ideologies led to his misdemeanor convictions, those involving his disturbances at the federal courthouse. ECF 74, p. 10 and 12. And even further back, Martinez showed violent behavior and disregard for human life when in 2009 he pointed a gun at his then-girlfriend's father, then shot at him from a vehicle. ECF 74, p.9. Then moving forward, in 2012, Martinez was convicted of misdemeanor battery for hitting a person. *Id.* at 10.

Martinez's threats and other criminal conduct strongly support a Guideline sentence.

    **B.**    **The 3553(a) Factors Do Not Support Martinez's Request for a Time-served Sentence and One Year of Supervised Release**

Martinez makes five arguments for a time-served sentence and a term of one-year of supervised release. None adequately support the sentence Martinez seeks, while the totality of the 3553(a) factors further undermines his request.

1. **The Three Years Martinez Has Spent on Pretrial Release Is of His Own Making and Do Not Justify a Below-Guideline Sentence**.

The three years Martinez has spent on pretrial release is of his own making. At the detention hearing, the Court found that Martinez posed a risk of danger to others, and placed on him the restrictive release conditions. The Court did so to assure the safety of the victims and the community. He does not deserve a break based on the restrictive he brought upon himself.

Moreover Martinez is primarily responsible for the three years he has spent on pretrial release. Eight of the ten continuances were sought by Martinez for his benefit.

Finally, Martinez should not expect to receive a benefit based on his having complied with the conditions of his release. He is expected to comply with the conditions and faced potential consequences for not doing so. He should not expect a benefit just because he did what was required of him.

In the end, the nature and circumstances of Martinez's offense, his history and characteristics, and the need for the sentence to reflect the seriousness of his offense dwarf Martinez' compliance with his release conditions.

2. **The Progress Martinez Has Made on Pretrial Release Does Not Support a Below-Guideline Sentence, Particularly in Light of All the 3553(a) Factors.**

While Martinez has made strides will on pretrial release, his strides pale in comparison to the 3553(a) factors. According to Martinez, while under pretrial release, he has developed a small farming business, been responsible for a family, and attended church, all commendable acts. But the totality of the 3553(a) factors were designed to help courts achieve fair and just sentences. Given the weight of the 3553(a) factors discussed above, a Guideline sentence should be imposed.

7

**3.     Martinez's Criminal History Accurately Reflects the Nature and Extend of His Criminal Conduct, and Is Not Overrated.**

Martinez's criminal history category of III accurately reflect the nature of his criminal conduct. It is not overrated. He began committing crimes when he was 19 years old and stopped when he was arrested in this case at age 32. His nature of his crimes accurately reflects the path he chose for himself. His criminal history category is not overrated.

Besides a driver license violation and a DUI, Martinez first crimes occurred in 2009 when he was 21 years old. He shot at his girlfriend's father from a motor vehicle, showing complete disregard for human life. In the three weeks before the shooting, he repeatedly threatened to kill the father.

Martinez did not behave any better sixteen months later. In 2012, when he was 23 years old, he committed a battery by hitting someone with his fist, again committing another act of violence. Two years later, in 2014 when Martinez was 26 years old, he was charged with DUI and later convicted of that crime.

Then in 2017, when he was 28 years old, he engaged in the obstructive behavior at the federal courthouse crime discussed above. And later in 2017, he was still 28 years old, he committed the crime of attempt carrying a concealed firearm or other deadly weapon, for which he was convicted in 2019.

Then in 2019, when he was 30 years old, he committed the other crime at the federal courthouse.

And in 2021, when he was 32, he committed the crime charged in this case.

Martinez tries to minimize his criminal history by calling it overrated. He says that studies show that when people are in their 20's, their brains are not fully developed. Maybe

so, but even a 21 year old with developing brain knows that shooting at a human being ins wrong and deviates from acceptable norms. In other words, at 21 years old, Martinez knew that it shooting at a human being was a serious crime.

But Martinez did not stop committing crimes in his 20's. He contined for nearly twelve years, into his 30's when he committed the crime at issue.

Given the nature of Martinez's criminal activity and the nature of it, his criminal history is not overrated.

### 4. Martinez Has Not Shown that He Is Entitled to an Adjustment from the Enhancement for Possession of a Large Capacity Magazine Firearm.

Martinez has not shown that he is entitled to an adjustment from the enhancement for possessing the firearm here because nothing shows that the Sentencing Commission promulgated the enhancement contrary to empirical evidence and national experience, and even if it did, the circumstances surrounding Martinez's possession of the firearm do not support an adjustment.

Martinez argues that the Sentencing Commission promulgated the enhancement in § 2K2.1 contrary to empirical date and national experience. However, he does not identify the empirical data or state what it supports. At most, he references a district court decision that barely discussed empirical evidence and granted an adjustmet based on the circumstances surrounding the defendant's possession of a firearm. Moreover the national experience Martinez reference does not support the adjustment an adjustment for him.

In *United States v. English*, 333 F.Supp.3d 1311 (M.D. Ala. 2018), the court found the high-capacity magazine enhancement was warranted but chose to vary downward based on the defendant's history and that the defendant had only used the firearm to hunt. In

analyzing the provision in the Guideline provision, the court stated that the empirical data "appear[ed] to undermine the rationale for the [Assault Weapons Ban]," that the Sentencing Commission never addressed whether the enhancement for semiautomatic firearms at issue should apply after the ban. *Id.* at 1313-1314. The court sidestepped digging into the data by granting a variance based on the defendant having sued a high capacity magazine firearm only for hunting.

Regarding national experience, the arguments Martinez makes also do not support a variance. The national experience he relies on is that large-capacity magazine firearms are ubiquitous in society, frequently used by non-felons, and not proscribed by many states. He also argues that large capacity magazines must not be bad because Congress allowed the ban on large capacity magazine firearms to lapse when it allowed the Assault Weapon Ban to lapse. These instances of national experience do not compel an adjustment.

The Sentencing Commission has the authority to conclude that possession of certain kinds of firearms by felons is especially dangerous, even if possession by the general public is not prohibited by law. *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009). It does not matter that the Guideline continues to provide for an enhanced punishment notwithstanding the expiration of a statute. Congress granted the Sentencing Commission substantial discretion in formulating guidelines. *Mistretta v. Unites States*, 488 U.S. 361, 377 (1989). The Commission has the authority to determine the relative severity of offender characteristics and to determine which crimes have been punished too leniently or too severely. *Id.* The Commission has discretionary authority to determine the relative severity of federal crimes and to assess the relative weight of the offender characteristics. *Id.*

Consequently, Martinez's reliance on his claims of national experience do not compel a variance for him.

Moreover, the fallacy of Martinez's national experience argument can been seen from the following situation. Although no state imposes a restriction on the number of firearms a non-felon citizen may possess, the Sentencing Commission has provided an enhancement for felons possessing three or more firearms. No reasonable argument can be made that the Sentencing Commission acted outside its lane by promulgating an enhancement for felons that is not applied to non-felons.

In any event, this court has the discretion to grant an adjustment when empirical data and national experience do not support a sentencing enhancement. In *Kimbrough v. United States*, 552 U.S. 85, 109-110 (2007), the Court held that a sentencing court acted reasonably when it departed from the then existing Guideline for crack cocaine because empirical data and national experience did not support the 100-to-1 sentencing disparity between crack cocaine and powder cocaine.

Regardless of whether empirical data and national experience undermined the firearm guideline, the Court should not grant an adjustment. Unlike the defendant in *English*, Martinez did not possess the firearm for a lawful activity – hunting. Rather, he possessed his firearm in connection with his threat to kill the prosecutor and the detective. No adjustment should be granted.

### 5. Martinez is Not Entitled to A Departure Based on the Status of the Firearm Statute in the Ninth Circuit Because the Matter is Before the Ninth Circuit En Banc and a Finding of Unconstitionality by the Ninth Circuit Could Affect Martinez's Conviction, Not His Sentence.

Martinez should not receive an adjustment simply because the constitutionality of the federal firearm statute is pending before the Ninth Circuit. *See United States v. Duarte*, 2024 WL 34431512 (9th Cir. July 17, 2024). Although three-judge panel found the statute unconstitutional in *Engish*, the Ninth Circuit has decided to hear the case *en banc*. That decision returns a matter to its status before the three-judge panel's decision. "A court's decision to rehear a case *en banc* effectively means that the original three-judge panel never existed. This is why the original panel disposition may not be cited the very minute that a court votes to rehear a case *en banc*." *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1186 (9th Cir. 2001), overruled on another ground by *Smith v. Davis*, 953 F.3d 582, 589 (9th Cir. 2020).

Separately, Martinez should not receive a sentencing adjustment based on the uncertain outcome of the *en banc* decision. A reversal by the *en banc* court could entitle Martinez to a reversal of his conviction, not a reduced sentence.

## IV.   CONCLUSION

Based on the foregoing, the Court should impose a Guideline sentence.

JASON M. FRIERSON
United States Attorney

*Daniel R. Schiess*
_____
DANIEL R. SCHIESS
Assistant United States Attorney